AUDUBON PARKING ASSOCIATES LIMITED PARTNER-
SHIP *v.* BARCLAY AND STUBBS, INC., ET AL.
(14431)

PETERS, C. J., CALLAHAN, BORDEN, BERDON and KATZ, Js.

Argued January 7—decision released June 15, 1993

*Carter LaPrade,* with whom, on the brief, was *Margaret A. Little,* for the appellant (plaintiff).

*William F. Gallagher,* with whom was *Barbara L. Cox,* for the appellees (defendants).

BERDON, J. The issues in this case arise from a settlement agreement reached by the parties in an action brought by the plaintiff, Audubon Parking Associates Limited Partnership, against the defendants, Barclay and Stubbs, Inc., and Benjamin S. Morris, to recover damages for breach of a commercial lease.[1]

The following facts are relevant to the disposition of this appeal. The plaintiff brought the present action against the defendants seeking damages for breach of the terms of the lease. The plaintiff also alleged that it was entitled to attorney's fees and expenses under the terms of the lease and to attorney's fees and expenses incurred in pursuing a summary process

---

[1] Benjamin S. Morris, president of Barclay and Stubbs, Inc., executed a written guarantee of the company's performance under the lease. Morris also filed a counterclaim, in which he alleged that he had suffered money damages after the plaintiff attached real property that he owned without first affording him notice and an opportunity for a hearing or bond.

action against Barclay. During jury selection, the parties represented on the record, in open court before the trial judge, *Licari, J.,* that they had agreed to settle the entire matter, including the claims asserted in the complaint and the counterclaim, for a sum of $50,000.[2] The defendants stated before the trial judge that they agreed with the settlement terms.

After the settlement agreement had been outlined and agreed to by both parties, the trial judge requested that counsel file withdrawals of the complaint and counterclaim before they left the courtroom. The court then stated that "[s]hould this matter unravel and the parties choose not to proceed on the settlement . . . I will allow the matter to be reinstated without costs and without prejudice." Counsel for the defendants then said: "I do want the record to be clear that we do have a settlement." The trial judge clarified that he was requesting the withdrawals at that time for administrative convenience.[3]

After the defendants failed to abide by the terms of the settlement, the plaintiff moved to restore the case

---

[2] The settlement agreement, as established on the record, included the following terms: "There is an agreement between the parties that the matter will be settled by a release and withdrawal, the condition being that there is to be twenty-five thousand dollars which is to be paid in good funds at the time of the exchange of the release and withdrawal.

"Also, after the exchange and release and withdrawal there will be a twenty-five thousand dollar irrevocable letter of credit payable in six months with interest at ten percent and the irrevocable letter of credit is to be canceled in the event that the second twenty-five thousand dollars is prepaid."

[3] We take judicial notice of the practice among presiding trial judges to require counsel to submit withdrawals when the in-court settlement is reached, prior to the execution of the settlement agreement. This practice provides an efficient method of clearing the court's docket. The trial court often instructs the parties that if difficulties arise upon effectuating the settlement, either party may request that the case be restored to the docket provided it is requested during the time period in which the court maintains jurisdiction. See, e.g., General Statutes § 52-212a. Either party may then proceed under the original jurisdiction of the court without the necessity of instituting another cause of action.

to the docket by filing a motion to open. The plaintiff also sought attorney's fees incurred in enforcing the terms of the settlement agreement. The motion, along with a covering letter to defense counsel, stated that the plaintiff was reserving the right either to enforce the settlement contract or to prosecute the original action. The trial court granted the motion to open and ordered jury selection to begin on a subsequent date.

On August 20, 1990, the plaintiff filed a motion for judgment in accordance with and enforcement of the settlement contract, and for attorney's fees incurred as a result of the defendants' failure to abide by the settlement accord. The trial court, after hearing the parties' arguments, rendered judgment against the defendants in accordance with the settlement agreement. The trial court concluded that the parties had intended to enter into a binding settlement, that the court, in accepting the settlement and obtaining the withdrawal, "never intended to give the defendant[s] the option to unilaterally negate the settlement," and that the trial court's comments about the possibility of the agreement unraveling were intended only to allow both parties, in the event of mutual agreement on avoiding the settlement, to put the matter back on the jury trial list. The trial court denied that portion of the motion that related to attorney's fees.

The defendants appealed to the Appellate Court and the plaintiff filed a cross appeal challenging the trial court's refusal to award attorney's fees. The Appellate Court reversed the judgment of the trial court, holding that the court had deprived the defendants of their right to a jury trial by rendering judgment for the plaintiff in accordance with the settlement contract.[4] The

---

[4] The Appellate Court held that the trial court had deprived the defendants of their right to a jury trial, even though the issue had not been raised before the trial court. *Audubon Parking Associates Ltd. Partnership* v. *Barclay & Stubbs, Inc.*, 26 Conn. App. 181, 184-85, 599 A.2d 395 (1991).

court pointed out that the plaintiff could have elected to proceed to trial on the underlying claim or could have instituted a separate action based on the breached accord; in either case the defendants would have been entitled to a jury trial. The Appellate Court also dismissed the plaintiff's cross appeal. *Audubon Parking Associates Ltd. Partnership* v. *Barclay & Stubbs, Inc.,* 26 Conn. App. 181, 183–85, 599 A.2d 395 (1991). We granted the plaintiff's petition for certification as to the following issues: "(1) In the circumstances of this case, did the parties agree to a binding settlement of their dispute in open court? (2) If the parties did so agree, what were the enforcement rights of the plaintiff when the defendant[s] withdrew from the settlement? (3) If the parties did so agree, what right did the defendant[s] have to a jury trial on the underlying claim on the settlement agreement?" *Audubon Parking Associates Ltd. Partnership* v. *Barclay & Stubbs, Inc.,* 221 Conn. 906, 600 A.2d 1359 (1992).

I

We begin our analysis by clarifying the nature of the defendants' claim. The defendants do not dispute that the parties entered into a binding settlement contract on May 17, 1990.[5] Rather, the gravamen of the defendants' claim is that the plaintiff, once it filed a motion to open the judgment, had elected to pursue its claim under the lease and was therefore precluded from seeking enforcement of the settlement contract. The

---

[5] Although the defendants concede that they entered into a binding settlement agreement, they argue that remarks made by the trial judge gave them a unilateral right to withdraw from the settlement agreement. This claim has no merit. As noted in the facts above, immediately after the trial court asked the parties to file withdrawals and assured them that the court would retain jurisdiction should the *parties* choose not to proceed on the settlement, defense counsel stated: "I do want the record to be clear that we do have a settlement." The trial court's words could not alter the nature of the agreement negotiated, reached and acknowledged by the parties in this case.

defendants argue that they were deprived of their right to due process of law and to a jury trial when the trial court summarily enforced the settlement agreement after the plaintiff allegedly had elected to pursue its claim under the lease. We reject both of the defendants' claims.

"An accord is a contract under which an obligee promises to accept a stated performance in satisfaction of the obligor's existing duty. Performance of the accord discharges the original duty." 2 Restatement (Second), Contracts § 281 (1982); *W. H. McCune, Inc.* v. *Revzon,* 151 Conn. 107, 109, 193 A.2d 601 (1963). If there is a breach of the accord, the obligee has the option of either seeking enforcement of the original duty or seeking enforcement of any obligation under the accord. 2 Restatement (Second), Contracts § 281 (1982); see also *Montgomery* v. *Smith,* 40 Conn. Sup. 358, 361, 499 A.2d 444 (1985); *Girasulo* v. *Consolidated Motor Lines, Inc.,* 5 Conn. Sup. 245, 247–48 (1937). Thus, in the present case, the plaintiff had the option of either pursuing its claim for breach of the lease agreement or enforcing the duties under the accord.

The initial question, then, is whether the plaintiff elected to enforce the original lease agreement.[6] The defendants do not claim that the plaintiff was required to decide at the outset whether to proceed under the

[6] The doctrine of election of remedies is equitable in nature and "is largely a survival from the formulary procedure of the common law which necessarily demanded consistency as an end in itself; [the] doctrine does not entirely accord with the modern conception of procedure which sacrifices consistency so far as is necessary to the attainment of substantial justice; and . . . the doctrine is a harsh one not to be extended." (Internal quotation marks omitted.) *National Transportation Co.* v. *Toquet,* 123 Conn. 468, 479, 196 A. 344 (1937). The doctrine is not intended to prevent recourse to any remedy, but to prevent double redress for a single wrong. 25 Am. Jur. 2d, Election of Remedies § 1; see also *National Transportation Co.* v. *Toquet,* supra; *DeLucia* v. *Burns,* 11 Conn. App. 439, 527 A.2d 1234, cert. denied, 205 Conn. 803, 531 A.2d 935 (1987).

lease agreement or under the settlement contract. Rather, the defendants claim that the plaintiff made an election and was accordingly bound.

The record indicates that the plaintiff informed the defendants on at least three occasions that it was reserving the right to enforce the settlement contract. Both in its motion to open and in a cover letter sent to the defendants, the plaintiff specifically reserved its right to proceed under either the original lease or the accord.[7] After the trial court granted the plaintiff's motion to open, the plaintiff again asserted the right to enforce the settlement contract. Upon granting the plaintiff's motion for judgment in accordance with enforcement of the settlement contract, the trial court stated: "I don't think the argument of the defendant[s], that counsel for the plaintiff or that the plaintiff has somehow waived the right to seek such relief, was established or is established because of the prior effort of the plaintiff to open the judgment. The motion to open the judgment clearly reserves to the plaintiff the right to seek either option. Obviously, the withdrawal had to be vacated before any further relief could be granted." We agree with the trial court and the Appellate Court that the plaintiff did not elect to proceed under the lease agreement when it filed its motion to open.

The defendants also claim that they were deprived of their right to trial by jury when the trial court summarily rendered judgment on the accord. We disagree. Under Connecticut law, it is clear that "[l]itigants . . . have a constitutional right to have issues of fact deter-

---

[7] The letter, dated July 16, 1990, stated in part: "This Motion to Reopen does not constitute an election on our part that we will only pursue the case in chief. It simply constitutes the first action we intend to take to resolve this matter. We reserve the right at all times to either sue upon the contract of settlement or to reopen the original claim. As to either action, we are seeking all attorneys fees so expended."

mined by a jury. *Mather* v. *Griffin Hospital,* [207 Conn. 125, 138, 540 A.2d 666 (1988)]; *Seals* v. *Hickey,* 186 Conn. 337, 350, 441 A.2d 604 (1982); *Jacobs* v. *Goodspeed,* 180 Conn. 415, 417, 429 A.2d 915 (1980)." *Palomba* v. *Gray,* 208 Conn. 21, 25, 543 A.2d 1331 (1988). The corollary to this constitutional right is that if there is no issue of fact, there is no right to a jury trial. In the present case, there was no issue of fact concerning the terms of the accord reached by the parties in open court. Indeed, the parties agree that the terms of the agreement were clear and unambiguous.

Notwithstanding the agreement, the defendants argue that the plaintiff was required to institute a separate action for breach of the accord in order to enforce it. The plaintiff argues that the trial court has the power to enforce summarily the settlement agreement within the proceedings initiated to resolve the underlying claim for breach of the lease. We have not previously considered this narrow question and turn to the federal courts for guidance.

A trial court has the inherent power to enforce summarily a settlement agreement as a matter of law when the terms of the agreement are clear and unambiguous. *Gatz* v. *Southwest Bank of Omaha,* 836 F.2d 1089, 1095 (8th Cir. 1988); see also J. Fischer, "Enforcement of Settlements: A Survey," 27 Tort & Ins. L.J. 82, 92 (1991). "Agreements that end lawsuits are contracts, sometimes enforceable in a subsequent suit, but in many situations enforceable by entry of a judgment in the original suit. A court's authority to enforce a settlement by entry of judgment in the underlying action is especially clear where the settlement is reported to the court during the course of a trial or other significant courtroom proceedings." *Janus Films, Inc.* v. *Miller,* 801 F.2d 578, 583 (2d Cir. 1986); see also *Janneh* v. *GAF Corporation,* 887 F.2d 432, 436–37 (2d Cir.

1989), cert. denied, 498 U.S. 865, 111 S. Ct. 177, 112 L. Ed. 2d 141 (1990); *Meetings & Expositions, Inc.* v. *Tandy Corporation,* 490 F.2d 714, 717 (2d Cir. 1974).

In *Janus Films, Inc.* v. *Miller,* supra, 583, Judge Newman, writing for the majority of the Second Circuit Court of Appeals, noted the important policy behind a court's power to enforce summarily a settlement agreement: "Due regard for the proper use of judicial resources requires that a trial judge proceed with entry of a settlement judgment after affording the parties an opportunity to be heard as to the precise content and wording of the judgment, rather than resume the trial and precipitate an additional lawsuit for breach of a settlement agreement. This authority should normally be exercised whenever settlements are announced in the midst of a trial."

Summary enforcement is not only essential to the efficient use of judicial resources, but also preserves the integrity of settlement as a meaningful way to resolve legal disputes. When parties agree to settle a case, they are effectively contracting for the right to *avoid* a trial. "The asserted right not to go to trial can appropriately be based on a contract between the parties." *Janneh* v. *GAF Corporation,* supra, 436. "The essence of that right [cannot] be vindicated effectively after the trial has occurred." Id. To hold that a jury trial is a necessary predicate to enforcement of a settlement agreement would undermine the very purpose of the agreement. We hold that a trial court may summarily enforce a settlement agreement within the framework of the original lawsuit as a matter of law when the parties do not dispute the terms of the agreement. The defendants did not have a right to a jury trial in this case and the trial court properly rendered judgment in accordance with the settlement contract.

## II

The plaintiff also challenges the trial court's refusal to award attorney's fees in addition to the damages specified in the settlement agreement. The plaintiff relies on three different authorities to support its claim for attorney's fees. First, the plaintiff claims that the lease itself provides for the award of attorney's fees. The plaintiff relies on our holding in *Storm Associates, Inc.* v. *Baumgold,* 186 Conn. 237, 246, 440 A.2d 306 (1982), in which we reversed the trial court's decision not to award attorney's fees and held that the plaintiff had a clear contractual right to attorney's fees. See also *Pacelli Bros. Transportation, Inc.* v. *Pacelli,* 189 Conn. 401, 415–16, 456 A.2d 325 (1983). These cases are inapposite, however, because the plaintiff has chosen not to proceed under the original lease agreement. As previously noted, "[p]erformance of the accord discharges the original duty" under the contract. 2 Restatement (Second), Contracts § 281 (1982). In this case, the entry of judgment in accordance with the settlement contract discharged the defendants' obligations under the lease agreement, including any obligation to pay attorney's fees.

The plaintiff also claims entitlement to attorney's fees under General Statutes § 52-236,[8] which allows a party to submit proof of damages that have accrued from a cause of action after the action has commenced. As we stated above, the entry of judgment in accordance with

---

[8] General Statutes § 52-236 provides: "In any action founded on contract, for the recovery of damages, the plaintiff may offer evidence of any damages that may have accrued from the same cause of action subsequent to the bringing of the action, provided he shall have given reasonable notice to the defendant of the damages which he intends to prove, and may recover judgment for the full amount of damages he may prove that he has sustained. The plaintiff, upon giving such notice, may, by leave of the court, increase the statement of amount in demand in the writ subject to the provisions of sections 52-91 and 52-259."

the settlement agreement discharged the defendants from any obligations arising under the lease. Furthermore, the plaintiff concedes that the settlement agreement did not contain a provision regarding the award of attorney's fees. Accordingly, § 52-236 does not support the claim for attorney's fees under the settlement agreement.

Finally, the plaintiff relies on General Statutes § 52-257 (e),[9] which authorizes the trial court to award taxable costs in an equitable action. " 'Costs are the creature of statute . . . and unless the statute clearly provides for them courts cannot tax them.' " *Verrastro* v. *Sivertsen,* 188 Conn. 213, 217, 448 A.2d 1344 (1982); see also *Hartford* v. *Public Utilities Commission,* 30 Conn. Sup. 244, 251, 309 A.2d 844 (1973). The plaintiff points to no authority to suggest that attorney's fees are included in the taxable "costs" referred to in § 52-257 (e). We agree with the Appellate Court that the plaintiff was not entitled to an award of attorney's fees.

The judgment of the Appellate Court is reversed in part and the case is remanded to that court with direction to affirm the judgment of the trial court.

In this opinion the other justices concurred.

---

[9] General Statutes § 52-257 (e) provides: "The provisions of this section shall not interfere with the discretion of the court in taxing costs in actions in which equitable relief is demanded."