[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION TO ENFORCE SETTLEMENT AGREEMENT
I
Introduction
This case involves a complaint brought by George W. Sicaras, the former Chief of Police of the City of Hartford against the City and a number of its officers and employees. Mr. Sicaras filed this action, pro se, in 1987, seeking to obtain certain pension, medical, severance, and other benefits that he believed he failed to receive at the termination of his employment. After three years of little action, Attorney Kathleen Eldergill filed her appearance on behalf of Mr. Sicaras. The case proceeded to trial while other related claims were pending and resolved in the United States District Court for the District of Connecticut. Attorney Eldergill withdrew her appearance in September, 1991.
On March 15, 1994, the case was scheduled for trial but prior to commencing voir dire, the parties met with Judge Corradino in an attempt to resolve the matter. According to the plaintiff, who was accompanied by his wife, the parties first discussed the case in chambers and then moved into the CT Page 12146 courtroom to continue negotiations. Prior to the end of the day, the parties reported a settlement agreement to Judge Corradino and the terms were read into the record.
The agreement purportedly resolved the plaintiff's claims and necessitated that certain releases be signed, submittals be made to the Pension Commission, payments be made, and a statement be placed in the plaintiff's personnel file. Approximately one week later, the releases were sent to Mr. Sicaras and on March 29, 1994, the plaintiff forwarded certain documents containing an evaluation and clippings to be utilized for the personnel letter. On March 30, 1994, a copy of the prepared letter was sent to Mr. Sicaras. On April 1, 1994, Mr. Sicaras expressed his dissatisfaction with that letter and indicated that he did not believe that he would have an application ready to meet the Pension Commission's time requirements. On April 1, 1994, the City submitted a new version and on May 11, 1994, the City wrote to Mr. Sicaras providing certain tax information and expressing its interest to finalize the matter. Mr. Sicaras responded on May 14, 1994 requesting certain pension changes and indicating that he was revising the personnel letter. On June 22, 1994, the City wrote again to Mr. Sicaras requesting that he execute the releases. A letter was sent to Mr. Sicaras' present attorney on July 6, 1994 with a response on September 14, 1994. After further correspondence in the fall, Mr. Sicaras, through his attorney, advised the City on January 27, 1995 that he would not agree to the settlement. The City filed the present motion to enforce the agreement shortly thereafter. Mr. Sicaras objected to the motion arguing, inter alia, that the agreement could not be enforced as there had been no meeting of the minds, as the terms of the agreement were ambiguous, and as he had signed the agreement under duress. After some delay, this court heard testimony and argument on the motion.
 II Discussion
 A.
In Audubon Parking Associates Ltd. Partnership v. Barclay Stubbs, Inc., 225 Conn. 804 (1993), our Supreme Court discussed whether a settlement agreement could be enforced after one party attempted to withdraw from the agreement. The CT Page 12147 Court rejected the argument presented by the defaulter that a separate action must be instituted to enforce the agreement. Id., 811. It noted that "[a] trial court has the inherent power to enforce summarily a settlement agreement as a matter of law when the terms of the agreement are clear and unambiguous." Id., 811. The court stated:
 Agreements that end lawsuits are contracts, sometimes enforceable in a subsequent suit, but in many situations enforceable by entry of a judgment in the original suit. A court's authority to enforce a settlement by entry of judgment in the underlying action is especially clear where the settlement is reported to the court during the course of a trial or other significant courtroom proceedings. Id., citing Janus Films, Inc. v. Miller, 801 F.2d 578, 583 (2d Cir. 1986)
 B.
As indicated, Mr. Sicaras objects to the enforcement of this agreement for many reasons. He argues preliminarily that there was no meeting of the minds because certain terms are ambiguous. The settlement agreement as reported to the court states
 One: The City will recommend that the Pension Commission for the City of Hartford approve a pension for George Sicaras in accordance with the following figures: $19,620.66 annually, $1,635.06 monthly, based upon documents calculated and supplied by the City Treasurer's Office.
 Two: The City of Hartford shall pay to George Sicaras the following sums upon approval by the Pension Commission:
 (A) $201,111.77 in pension benefits due from November 1983 through January 1994. An additional amount of pension benefits will be payable upon approval of the CT Page 12148 Pension Commission for the period February 1994 through the date of approval of the Pension Commission.
 (B) $73,376.72, representing 6 percent interest on the sum reflected in item (A) above.
 (C) $3,638.09 in interest on pension contributions taken in error from the plaintiff.
 Three: From the above sums the City will deduct $3,041.68, representing interest on contributions owed to the MERF.
 Four: In addition, the City of Hartford will pay to George Sicaras $20,000 in full settlement of the plaintiff's claims for administrative time.
 Five: In exchange for the foregoing sums, the plaintiff, George Sicaras, agrees that the City may file the attached withdrawal of action upon the Pension Commission's approval of above pension sums. The plaintiff also agrees to execute a release of any and all claims he has, has had or that he ever may have against the defendants and any of the City of Hartford's past or present representatives, officials, employees, Pension Commission, or agents specifically in connection with the aforementioned offer in the pending action, any pending worker's compensation claim, except for claim number BP33767P (April 22d 1971) regarding a back injury, his employment with the City of Hartford, and his pension. This release shall be entered into before any sums are paid to the plaintiff under this agreement.
Six: The City and all other named CT Page 12149 defendants expressly deny any wrongdoing in connection with plaintiff's claim and are entering into this agreement solely to avoid the costs of protracted litigation.
 Seven: The parties have further agreed that the City of Hartford will prepare a statement to be placed in Mr. Sicaras's personnel file which will reflect the contents of his favorable performance evaluations received in the past as police chief from Woodrow Wilson Gaitor, then city manager. The statement will be used to respond to inquiries about the plaintiff's performance.
 C.
1.
The plaintiff now argues that he doesn't understand the pension figures and that they are different from figures discussed at an earlier meeting. He also contests the amount of the lump sum payments. The fact that he has questions about the amount of the payments he will receive or that he believes that he should receive more does not make the agreement ambiguous. The document clearly states the exact amounts. Mr. Sicaras is evidently upset with the agreement he struck; nevertheless, that does mean it is ambiguous.
2.
Mr. Sicaras further argues that as certain benefits must be approved by the Pension Commission and the Worker's Compensation Commissioner, the agreement is not final (and thus presumably, can be repudiated). Such is not the case. It is commonplace to resolve matters based, in part, on the subsequent approval of other legal entities. Indeed, General Statutes § 31-296 even anticipates that parties will enter into an agreement for approval by the Worker's Compensation Commissioner. It states, in part,
 Sec. 31-296. Voluntary agreements. If an employer and an injured employee, . . ., reach an agreement CT Page 12150 in regard to compensation, such agreement shall be submitted in writing to the commissioner by the employer with a statement of the time, place and nature of the injury upon which it is based; and, if such commissioner finds such agreement to conform to the provisions of this chapter in every regard, he shall so approve it.
Obviously if the final approvals were not received, the agreement would require further discussion. Yet, here, Mr. Sicaras has refused to participate in the first step — thus precluding review by the relevant boards. He cannot be heard to complain.
 D.
Mr. Sicaras argues in his May 4, 1995 Objection, p. 8, that "what the City of Hartford attempted to do was extort a settlement from a pro se litigant by threatening him with the loss of his well-earned pension". Additionally, he argues that he was "pressured into a settlement" and "the agreement which was the result of that duress should not be allowed to stand." (Objection, § B) Moreover, at the hearing, Mr. and Mrs. Sicaras testified that they were kept in the courtroom for approximately 6 1/2 hours with only time for a quick soda or phone call and no opportunity for lunch.
The Sicaras testimony was controverted by the city's former attorney Anna V. Crawford[1] who testified that both parties took breaks, took a lunch break, fully negotiated and suggested provisions to the agreement. She also stated that Mr. Sicaras said he was pleased with the agreement.
While this court takes Mr. Sicaras' allegations seriously, it does not believe that Mr. Sicaras has proved his allegations of duress. First, Mr. Sicaras was not an ordinary pro se litigant — he was with the Hartford police department for twenty years, including administering the department as its Chief. He is presently the Director of Public Safety at a local college. Thus, the idea that he was bullied in the negotiations is simply not believable. Second, according to his testimony, he was prepared — even ready — to pick a jury and try the case — but not negotiate a resolution. Such an argument lacks logic. This court simply cannot believe that this former police chief was placed under duress because he CT Page 12151 was "forced" to negotiate. Third, at the conclusion of the settlement negotiations, Mr. Sicaras appeared in front of Judge Corradino for a canvass and review of the terms of the agreement.[2] He ended that discussion with "[a]ppreciate the Courts help in this matter your Honor." It does not reveal a man in distress. Fourth, Mr. Sicaras has argued that he was told he would lose his pension benefits if he did not agree. This court finds this statement in conflict with his position that he was ready for trial. He could have simply tried the case.
 E.
His last claim is that he was deprived of the assistance of counsel — not for the trial — but for the negotiations. He testified that he was ready to try the case by himself — but needed counsel to negotiate. This court heard that he had retained Attorney Robert Krysz — but Attorney Krysz did not
represent him in the litigation — he did not file an appearance. Mr. Sicaras attempted to contact Mr. Krysz, as well as other attorneys, during the settlement discussions but was unable. Nevertheless, as noted above, Judge Corradino was impressed with Mr. Sicaras's knowledge of the case. If Mr. Sicaras wanted the assistance of Mr. Krysz, he could have retained him — he did not.
 III Conclusion
This case is, in the final analysis, a situation of Monday morning quarterbacking. While the rights afforded under this agreement are not insubstantial — they include a $19,620 yearly pension; and a lump sum payment of approximately $294,000 — Mr. Sicaras simply wanted to renegotiate to obtain a better bargain.
Perhaps a successful jury verdict would have returned more; perhaps it would not. Perhaps further negotiations would have brought more; perhaps not. Nevertheless, the terms of this agreement are clear and unambiguous. This court finds no duress and thus finds that the defendant is entitled to enforce this agreement. Audubon Parking Associates Ltd.Partnership v Barclay Stubbs Inc., supra, 225 Conn. 812. CT Page 12152
Berger, J.