[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANT'S MOTION FOR ENFORCEMENT OFSETTLEMENT AGREEMENT
This matter arises out of a lawsuit brought by the plaintiff against the defendant seeking payment of outstanding bills alleged by the plaintiff to be due to it for providing home companion care services at the direction of the defendant.
The case having been assigned for trial to Judge Michael Sheldon was discussed at length by him and the attorney for the plaintiff, David Cooney, and the defendant's attorneys, Michael Kurs and Everett Madden. Present in court but not participating CT Page 3135 or present at the conference were the plaintiff's president, Constantine Zessos, and Linda Johnson, executive director of Agis at the time in question.
It is the defendant's claim that a settlement agreement was reached before Judge Sheldon. The agreement took the entire day of April 12, 1996 to conclude. The defendant further claims that the agreement specifically provided for the following terms:
The defendant was to pay the plaintiff a total sum of $350,000. An initial payment of $250,000 was to be made when the agreement was approved by the defendant's board of directors. A second payment of $50,000 was due in December 1996. A third payment of $50,000 was to be made one year later. The only contingency in the agreement was the defendant board's approval.
The agreement further provided that the plaintiff would be permitted to rebill the defendant for outstanding bills up to $194,000. Some or most of these bills were to be resubmitted to the State of Connecticut for payment. The defendant agreed to cooperate in good faith with the plaintiff in its effort to obtain payment from the state.
Lastly, the defendant alleges that the parties agreed that the settlement agreement would be enforceable under the procedure outlined in Audubon Parking Assoc. Ltd. Partnership v. Barclayand Stubbs, Inc., 225 Conn. 804 (1993).
To briefly explain the reasoning behind this facet of the agreement, (and the parties do not dispute that they indeed did agree to it), a short historical note is necessary. Traditionally in our state courts prior to Audubon enforcement of settlement agreements was accomplished by a suit to enforce the agreement.Audubon, citing federal cases decided that such a procedure was wasteful and destroyed what the parties sought to accomplish by their settlement, i.e. to avoid a trial. Our Supreme Court thereupon approved a new procedure for settlement enforcement — a motion for enforcement — to be decided in the same case by the trial judge.
The parties have indeed stipulated that this court is to decide the issue of whether or not there was in fact a settlement agreement, pursuant to Audubon.
At that hearing, the court heard the following evidence: (1) CT Page 3136 Testimony from Attorney Kurs as to the terms of the settlement agreement; (2) A submission by the parties of interrogatories submitted to Judge Sheldon (Ex.E); (3) Testimony from the plaintiff president and executive director; (4) Additional exhibits submitted.
After a review of the testimony and exhibits, this court concludes that, in fact, the parties had reached a definitive settlement and that it should be enforced.
The court finds the testimony of the witnesses in attendance at the settlement conference to be credible. Judge Sheldon was the only neutral witness. His answer to interrogatory #5, is particularly persuasive.
Interrogatory #5 asks: Did the parties agree at the settlement conference that in the event an agreement was reached on all terms the agreement would be summarily enforceable as provided for under Audubon Parking Assoc. Ltd. Partnership v.Barclay and Stubbs, Inc., 225 Conn. 804 (1933)? (sic).
Judge Sheldon's response is as follows: "The parties, through counsel, agreed that once the CCCI board approved the agreement, it would be put on the record before me and be subject, by its terms, to enforcement by the court's." Audubon, as previously noted, is referenced in the question posed to Judge Sheldon.
The plaintiff's witnesses were not in attendance at the settlement conference but were kept advised of the negotiations thru Attorney Cooney who was in attendance. Judge Sheldon's understanding of the settlement was based on his conversation with and representations made by attorneys for both parties.
The court finds that the plaintiff, through its president, did in fact agree to the settlement although he later had misgivings about it. There is no evidence that Attorney Cooney indicated to Attorney Kurs or Judge Sheldon of his client's dissatisfaction with the settlement.
Judge Sheldon's response to interrogatories 2, 4 and 8 clearly demonstrate that the agreement was sufficiently specific. It is undisputed that the only contingency was the approval of the defendant board and that such approval was in fact given by the defendant's board on May 3, 1996. The plaintiff did not reject the settlement until May 9, 1996 when Attorney Cooney CT Page 3137 notified Attorney Kurs of his client's decision.
Apparently it is the claim of the plaintiff's president, Mr. Zessos, that he did not approve and agree to the settlement agreement. Even if this were so, it is no defense to this motion because it is our law in Connecticut that the general rule is that admissions, if relevant and material, made by an attorney incidental to the general authority of the attorney to represent his client in connection with and for the purpose of controlling the matter committed to him are admissible against the client.Expressway Associates II v. Friendly Ice Cream Corp. ofConnecticut, 218 Conn. 474, 478, 590 A.2d 431 (1991), quotingCollens v. New Canaan Water co., 155 Conn. 477, 496, 234 A.2d 825
(1967).
In this case, the acts and admissions of Attorney Coney at the settlement conference were binding admissions on the plaintiff.
The defendant's motion for enforcement of the settlement agreement is granted. The court will retain jurisdiction to supervise the promulgation of the agreement.
Freed, J.