[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE
CT Page 4501MOTION TO COMPEL COMPLIANCE WITH SETTLEMENT AGREEMENT
These three matters all arise out of the sale of certain property from Schwartz to the Hartts, which property, as it turned out, had been contaminated by toxic chemicals released by a former tenant on the property. In Docket No CV92 0331912 S, the plaintiffs, Russell and Katherine Hartt (the "Hartts), have brought this action against the defendant, Rosalind Schwartz, Executrix of the Estate of Eli Schwartz ("Schwartz"),[1] for cleanup costs and other direct and indirect damages resulting from an alleged failure to comply with Connecticut's Hazardous Waste Transfer Act, General Statutes § 22a-134, et seq., and alleged contamination on certain property conveyed o them by Schwartz on March 14, 1986. Docket No. CV95-0404009S is an action to determine insurance coverage, and Docket No. CV96-0391003S is a Prejudgment Remedy action brought by Schwartz.
When the first of these action was called in to commence jury selection, earnest good faith settlement negotiations began and continued over the course of several days, culminating in an agreement to resolve all pending litigation. That agreement was recited in open court an on the record, with several of the parties and all counsel present. The parties represented that a formal written stipulation would be drafted, approved and submitted to the court, and that the parties would then further stipulate to the substitution of SEBMAP Realty, LLC as a clean-up entity and party plaintiff in the PJR action, and that a judgment of strict foreclosure would be allowed to enter in favor of SEBMAP with a waiver of the appeal period and the setting of the earliest possible law day. The parties also agreed that the rents pending formalization of the settlement and obtaining the judgment of strict foreclosure would be divided equally between the Hartts and Schwartz. Although the recitation did not include a precise timetable for reducing the agreement to writing, it was apparent from the discussion on the record that a written agreement was expected within days, rather than weeks or months.
A critical issue in the negotiations had been whether the Department of Environmental Protestion (DEP), which was not a party to any of these proceedings, would agree not to pursue a cost recovery claim against the Hartts. At the time the settlement agreement was reported to the court, counsel for the Hartts stated: CT Page 4502
 Also, Your Honor, on the day of the pretrial last week, I had mentioned that there were a couple conditions that my clients wanted met before they agreed, and those conditions have been met.
 What I want to say is, based on representations by the DEP, from Elsie Patton, the DEP will be revoking the order that currently is against Russell and Katherine Hartt as soon as consent order is entered into between DEP and SEBMAP Realty, LLC. Also, we have received an oral representation from Patton that the cost of recovery action now pending against Russell and Katheline Hartt will be revoked as well. All I am waiting for on that, Your Honor, is a letter from David Wrynn from the Attorney General's Office, and Dick Barlow from the Waste Management Bureau of the DEP, confirming that. So I want to make clear that it's no longer contingent on that; that I have received satisfactory assurance from the DEP that those two items will be taken care of.
In fact, the DEP has not, at least as of this writing, formally agreed not to pursue its cost recovery claim, and the Hartts have been reluctant to sign the stipulation until that happens. Schwartz has now moved to compel the signing of the agreement or its enforcement, as recited on the record on January 13, 1998, as a judgment, pursuant to the holding in AudubonParking Associates Ltd. Partnership v. Barclay Stubbs, Inc.,225 Conn. 804 (1993). All other parties joined in this request except the Hartts, who claimed that failure of DEP to honor its pledge to withdraw the cost recovery action renders the settlement unenforceable.
It is now well established that an agreement to settle a lawsuit is binding upon the parties. Audubon Parking AssociatesLtd. Partnership v. Barclay Stubbs, Inc., supra. Once reached, a settlement agreement cannot be repudiated by either party. Whether the parties in fact concluded a settlement agreement is determined by "the intention of the parties manifested by their words and acts." Hess v. Dumouchel Paper Co., 154 Conn. 343, 347
(1966). The intention of the parties is a question of fact, and when that is ascertained it is conclusive. Ballard v. AssetRecovery Management Co., 39 Conn. App. 805, 809 (1995). A settlement agreement, freely bargained, is recognized as binding upon the parties. See also, Montgomery v. Smith,40 Conn. Sup. 358 (1985); Zauner v. Brewer, 7 Conn. L. Rptr. No. 9, 251 (September 21, 1992; and Girasulo v. Consolidated Motor Lines,Inc., 5 Conn. Sup. 245 (1937). CT Page 4503
In determining whether to enforce a settlement agreement, the intention of the parties is controlling and is the key consideration. Pascarella v. Bruch, 190 N.J. Super. 118,462 A.2d 186 (App.Div. 1983). The transcript of the settlement agreement's recitation in open court leaves very little in the way of any factual dispute about the parties' intent. In light of what is unchallenged fact, the Hartts attempted to escape the clutches of Audubon Parking Associates Limited Partnership v.Barclay and Stubbs, Inc., supra, by arguing that the settlement agreement was not clear and unambiguous because it relied on representations by a representative of DEP that she should not have or could not have made. Although these might have been concerns that would have prevented the Hartts from entering into the agreement ab initio, their counsel made it crystal clear, in the comments quoted above, that they were satisfied with those representations.
"Agreements that end lawsuits are contracts, sometimes enforceable in a subsequent suit, but in many situations enforceable by entry of a judgment in the original suit. A court's authority to enforce a settlement by entry of judgment in the underlying action is especially clear where the settlement is reported to the court during the course of a trial or other significant courtroom proceedings . . . Due regard for the proper use of judicial resources requires that a trial judge proceed with entry of a settlement judgment after affording the parties an opportunity to be heard as to the precise content and wording of the judgment, rather than resume the trial and precipitate an additional lawsuit for breach of a settlement agreement. This authority should normally be exercised whenever settlements are announced in the midst of a trial." Janus Films, Inc. v. Miller,801 F.2d 578, 583 (2d Cir. 1986). The fact that this agreement was reached not during trial but just prior to jury selection, is a difference without a distinction. The agreement was clear and unambiguous and should, if not promptly reduced to writing by the parties, be enforced by this court as a judgment.
Subsequent to oral argument the undersigned received correspondence from counsel for Hartts to the effect that his clients were now willing to sign the agreement, even in the absence of the assurances he had previously sought from DEP, but that one of the insurers contributing to the settlement funds was now insisting on an indemnification provision in the release the Hartts were to sign. A review of the transcript of the proceeding CT Page 4504 at which the settlement agreement was recited in open court reveals that an indemnification provision had never been a part of that agreement.
It is therefore the order of this court that:
1) all parties sign a settlement agreement with such terms as are mutually agreeable to them on or before April 27, 1998; and that if the parties are unable to agree to such terms, that on or before May 1, 1998, all parties sign the draft Settlement Agreement that had been circulating among the parties at the time that Schwartz brought the instant motion to compel compliance with the settlement agreement, but minus the following language of Paragraph 8 of said draft:
 Additionally, that Hartts are entering into this agreement in reliance on and contingent on the representations of the DEP that the Water Management Bureau will recommend to the Attorney General's office and the Waste Management Bureau that the state not seek cost recovery for the Property, provided the Consent Order is entered into and without any reference to an indemnification agreement between the Hartts and the Hartford Insurance Co.;
2) that mutual releases be exchanged and withdrawals of action filed on or before May 1, 1998; and
3) should the parties fail to sign a settlement agreement, it is further ordered that all parties appear in Courtroom 4-C on Monday, May 4, 1998 so that the court may enter a judgment on the record in accordance with the January 13, 1998 agreement and to enter such other orders as may be appropriate with respect to any party who has failed to comply with any of the other orders entered this day.
As to the issue of rents, it is apparent to the court that the parties contemplated a division of the rents only for the period of time it was anticipated would be required to reduced the agreement to writing. That task should have been completed by the end of the month of January, and it was the Hartts' reluctance to sign the agreement that has prevented this case from resolving. The court therefore orders that rents for the period beginning February 1, 1998 shall be paid soley to Schwartz. CT Page 4505
Jonathan E. Silbert, Judge