[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: DEFENDANTS' MOTION TO ENFORCE SETTLEMENT AGREEMENT
This is an action on a note brought by the plaintiff against the defendants, Mor-Fam Electric, Inc. and Richard Robinson. The matter was scheduled for trial on November 26. 1997, and in the week or so prior to the trial, counsel for all parties engaged in settlement negotiations. The defendants offered to pay $20,000.00 in full and final settlement of all claims against them, but the plaintiff wanted to review certain financial information from the CT Page 10317 defendants before agreeing to accept this sum. This problem was exacerbated by the hospitalization of the defendant Robinson approximately one week before the trial. Although Robinson was unable to sign financial affidavits, another New Haven attorney, Alexander Scheirer, did have certain information regarding Robinson, which defendants' attorney obtained and forwarded to plaintiff's counsel.
In a letter from defendant's counsel, David Doyle, to Attorney Michael Kopsick, who represented the plaintiff, the defendant had offered $20,000.00 subject to the plaintiff's review of the financial statements that Doyle had obtained from Scheirer. The letter invited Kopsick to call "if this is not our agreement". Kopsick orally indicated that DAP had accepted the offer and confirmed this by a fax transmission dated November 25, 1997. The defendants' attorney had suggested the possibility of some difficulty in making timely payment because of Robinson's hospitalization, and Kopsick indicated in his fax that this would not be a problem if the exchange of settlement documentation and monies was accomplished within around 30 days. (The actual understanding had been that this would be accomplished no later than shortly "after the holidays", which, given the context, this court understands to mean just after Christmas and New Year's Day.) Kopsick also acknowledged that the court had been notified that the matter was settled and therefore would not be tried on November 26.
Robinson died before the tender of the $20,000.00, and the defendants' counsel filed a suggestion of death. Kopsick then wrote to Doyle stating that DAP was no longer willing to accept the settlement because the homestead exemption that would have been applied to Robinson's home (which had been attached by the plaintiff) was no longer available to Robinson's estate. Because substantially more equity would be available to the plaintiff, Kopsick wrote, the original offer was no longer acceptable.
Based on their position that the $20,000.00 was not a mere "settlement offer" which the plaintiff was at liberty to reject, but rather part of an unambiguous agreement to resolve the case, the defendants moved to enforce the settlement agreement pursuant to Audubon Parking Associates Limited Partnership v. Barclay andStubbs, Inc., 225 Conn. 804 (1993). This motion was granted by the court (O'Keefe, J.) on April 6, 1998. The parties have stipulated however, that they had understood that this motion would be marked off the short calendar for that date. They CT Page 10318 subsequently agreed that the motion could be restored to the docket and reargued at another time, but six weeks passed between this agreement and the time that the plaintiff actually filed its motion to reargue. Although the motion to reargue was addressed to Judge O'Keefe, he referred it to the undersigned in his capacity as presiding civil judge. The undersigned granted reargument and heard not only argument but also testimony from Attorneys Doyle and Kopsick as well as from Richard Hepburn, the Vice President of DAP. The court also received several documents into evidence.
The defendants first interpose a procedural objection to the motion to reconsider Judge O'Keefe's order, based on their contention that more than 20 days had elapsed from the rendering of that order before the plaintiff filed its motion to reconsider. They therefore claim that this order was a final judgment, that no motion to reconsider should lie and that the court lacks subject matter jurisdiction over the request to reconsider Judge O'Keefe's order. See DeTeves v. DeTeves,202 Conn. 292, 298 (1997); Palmer v. DesReis, 136 Conn. 627, 630
(1950); Haynes v. Power Facility Evaluation Council,177 Conn. 623, 629-30 (1979).
In light of the fact that the parties had intended that the matter be marked off when it appeared on the short calendar for May 6, 1998 and that the parties had agreed that they would ask to the court for reargument, it is apparent that the defendant is seeking to take unfair advantage of the mutual mistake of all concerned. "The court's power to retrieve a mistakenly entered judgment derives from its inherent authority over its own judgments and is not dependent upon any statutory or practice book authority . . ." Cusano v. Burgundy Chevrolet, Inc., Docket No. CV91-0320862, Judicial District of New Haven (Licari, J.) 22 Conn. L. Rptr. #8, 289-90 (1998). This court therefore has jurisdiction to vacate Judge O'Keefe's judgment even though reargument was not requested until more than 20 days had elapsed. Thus, to the extent that the defendants seek to enforce the settlement agreement based on this procedural claim, that effort must fail.
At the hearing following the granting of reconsideration, this court heard testimony from David S. Doyle, the defendants' attorney, Michael Kopsick, who at all pertinent times had been the plaintiff's attorney, and Richard Hepburn, a Vice President of DAP. Doyle testified to the settlement agreement as previously CT Page 10319 outlined and his correspondence with Kopsick. He acknowledged, however, that the financial information regarding Richard Robinson was not in the form of signed, sworn financial statements, and he agreed that the settlement funds had not been tendered by the time that the plaintiff repudiated the agreement.
Kopsick's testimony was not significantly different from Doyle's, although he did maintain that he had been insisting on signed, sworn financial statements from Robinson and the immediate payment of the settlement funds into escrow pending exchange of settlement documents. The documentary evidence, however, established that agreement on the sum of $20,000.00 was not conditioned on the receipt of signed financials, although the funds were to be held in escrow until signed financials were received. Kopsick also testified that DAP fired him once it had learned of the details of the settlement.
Hepburn testified that Kopsick had no authority to propose or agree to the $20,000.00 settlement. He claimed (incredibly, in this court's view) that he had no knowledge of the $20,000.00 proposal, and that he never would have agreed to it. Kopsick, however, testified that he believed that he was authorized to enter into the settlement agreement previously outlined, and this court finds his testimony altogether credible. It was Kopsick who contacted the court and asked that the case be placed on the settled but not withdrawn list. Surely, he would not have done so had he not believed that he was authorized to settle this case and that he had indeed done so, with only the exchange of documents and monies needing to be accomplished before the case would formally be withdrawn.
Although there had been uncertainties in the days leading up to the settlement agreement in this case as to what sort of financial documentation would have been required before the defendants' offer would be accepted, the settlement agreement itself is clear and unambiguous. The case was agreed to be settled for $20,000.00, based on the unsigned financial information but conditioned on signed versions eventually being provided. The failure to provide signed versions (impossible in light of Robinson's death) is not, however, the reason why this settlement agreement unraveled. Kopsick's December 2, 1997 letter to Doyle specifically states:
 When we had first contemplated this settlement offer, we had assumed Mr. Robinson would assert his Homestead exemption to any attempt to CT Page 10320 foreclose a judgment lien on 23 Wilkins Street. As Mr. Robinson is now deceased and not survived by any spouse, the Homestead exemption no longer applies, thereby making substantial equity available.
That the plaintiff now regrets having agreed to this settlement, in light of the fact that a deeper pocket, in the form of Richard Robinson's estate, would have been available for future settlement discussions or trial, does not render the agreement itself ambiguous. Courts can and should enforce an unambiguous settlement agreement that terminates litigation, and this court will do so here.
It is now well established that an agreement to settle a lawsuit is binding upon the parties. Audubon Parking AssociatesLtd. Partnership v. Barclay Stubbs, Inc., supra. Once reached, a settlement agreement cannot be repudiated by either party. Whether the parties in fact concluded a settlement agreement is determined by "the intention of the parties manifested by their words and acts." Hess v. Dumouchel Paper Co., 154 Conn. 343, 347
(1966). The intention of the parties is a question of fact, and when that is ascertained it is conclusive. Ballard v. AssetRecovery Management Co., 39 Conn. App. 805, 809 (1995). A settlement agreement, freely bargained, is recognized as binding upon the parties. See also, Montgomery v. Smith,40 Conn. Sup. 358 (1985); Zauner v. Brewer, 7 Conn. L. Rptr. No. 9, 251 (September 21, 1992; and Girasulo v. Consolidated Motor Lines,Inc., 5 Conn. Sup. 245 (1937). In determining whether to enforce a settlement agreement, the intention of the parties is controlling and is the key consideration. Pascarella v. Bruch,190 N.J. Super. 118, 462 A.2d 186 (App.Div. 1983).
"Agreements that end lawsuits are contracts, sometimes enforceable in a subsequent suit, but in many situations enforceable by entry of a judgment in the original suit. A court's authority to enforce a settlement by entry of judgment in the underlying action is especially clear where the settlement is reported to the court during the course of a trial or other significant courtroom proceedings. . . Due regard for the proper use of judicial resources requires that a trial judge proceed with entry of a settlement judgment after affording the parties an opportunity to be heard as to the precise content and wording of the judgment, rather than resume the trial and precipitate an additional lawsuit for breach of a settlement agreement. This authority should normally be exercised whenever settlements are announced in the midst of a trial. "Janus Films, Inc. v. Miller, CT Page 10321801 F.2d 578, 583 (2d Cir. 1986). The fact that this agreement was reached not during trial but just prior to trial, is a difference without a distinction. The agreement was clear and unambiguous and was the basis for the plaintiff's having informed the court that the case would not be tired and would be withdrawn.
The defendants' motion to enforce settlement agreement is therefore granted. Implicit in granting of this motion, however, is the requirement that verified financial data that would be the equivalent of the signed financial information on which the agreement was originally conditioned be provided to the plaintiff within 30 days.
Johnathan E. Silbert, Judge.