[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action by the plaintiff condominium association against the owners of one of the condominium units to collect common charges and other fees. It is brought as a foreclosure action on a lien pursuant to Conn. Gen. Stat. § 47-258. The defendants Rodney Bastedo and Joanna Karbowska are the record owners of unit #8 at Presidio Commons, 64-68 Fountain Street, New Haven. They have each appeared in this matter pro se. Rodney Bastedo currently occupies the unit and is the person with whom the plaintiff seems to have dealt on this matter exclusively. For that reason, when the court uses the singular "defendant," it refers to Bastedo. The third defendant Citicorp Mortgage, Inc., is the mortgagee, and as a mere encumbrancer, has appeared by counsel but has not otherwise participated in these proceedings.
The plaintiff alleges in the complaint that the defendant failed to pay certain common charge installments beginning in March of 1999 and owes $1210 in past due common charges, excluding late charges, interest, costs, and attorney fees. The defendant disputes this figure. Moreover, the defendant alleges, in a paper entitled Motion to Compel Settlement Agreement, that an accord was reached in August 2000 to settle this CT Page 5741-el case. He claims that the plaintiff has now attempted to repudiate this accord and that the court should summarily compel the plaintiff to end this litigation.
The matter was tried to the court on April 18, 2001. Both sides fully presented their evidence through witnesses and documents received as exhibits. The court finds the defendant's motion to be dispositive of this matter and finds the following facts relative to the defendant's claim that the court should summarily enforce the settlement agreement in this matter.
The matter was placed into suit by plaintiffs counsel in January 2000. The action claims overdue common charges of $1210, exclusive of interest, late charges, attorney fees, and costs. The William Hotchkiss Company, a private management company, was retained by the plaintiff to take over the management of the affairs of the plaintiff, effective January 1, 2000. Thereafter, the defendant undertook to deal with Linda Warburton, an employee of Hotchkiss, in attempting to settle the claim that he owed the condominium association back common charges and penalties. Warburton and Bastedo exchanged written correspondence and set up a meeting at which the defendant presented cancelled checks for many past payments. Warburton was able to reconcile most of them with a schedule that she had constructed from the haphazard records she had previously gathered from the condo association. She calculated that $461 was the total amount due, composed of two months of delinquent common charges, with the rest comprised of late fees and parking violation charges. She then wrote a letter to the defendant proposing a settlement of the claims of the condominium association as follows:
 Please find enclosed a copy of your delinquency report, showing the balance due of $461.00 through the month of July [2000]. . . . The Board of Presidio Commons has agreed to accept this amount due paid in full provided it is paid before August 10th . . . If you agree with this solution, please sign below to execute the agreement, and you will not be charged with any other fees in question from the period prior to 1/1/2000.
By date of August 6, 2000, the defendant responded to the Warburton letter with his own signed letter in which he accepted the offer to settle. It attached the Warburton letter as a reference, changing the date of 1/1/2000 to August 1, 2000, to make it conform to the actual date through which the account had been reconciled.[1] The defendant CT Page 5741-em enclosed a check for $461 to consummate the settlement and an additional check for $143, the current charges for the month of August. He referenced the pending lawsuit and stated in the letter that the settlement check should not be deposited until Warburton obtained the signature of Roy Scharf, attorney for the condominium association. This was presumably to guarantee that Mr. Scharf knew to withdraw the lawsuit. The defendant did not ask for Warburton to return to him a copy of the document with Scharfs signature.
Until Warburton received the acceptance letter and the checks from the defendant, Warburton herself was unaware that the matter had been placed into suit. She called Scharf upon receipt of the defendant's letter, told Scharf of the settlement, and asked him about the lawsuit. Scharf confirmed that a lawsuit was pending. Warburton read the defendant's August 6 letter to Scharf over the phone, and asked Scharf what to do. Scharf told Warburton that she could deposit the checks and that he would communicate directly with the defendant about the matter. Warburton then deposited the defendant's settlement check (and the other check as well), and she assumed the matter was over, as did the defendant.
By October it was clear that Scharf was not going to withdraw the case but rather would maintain it to attempt to collect further sums, including attorney fees. The defendant protested, to Scharf, to Warburton, and to members of the association, that there was an agreement to settle the case and that in fact the settlement had been consummated but for the refusal of Scharf to withdraw the lawsuit. The defendant even offered to pay some additional sums toward Scharfs attorney fees in a further attempt to end the litigation. Scharfs response was that his entire attorney fee needed to be paid, if not by the defendant then by the condominium association. Scharf disavowed any obligation to withdraw the lawsuit under the settlement agreement by pointing out that he never actually signed the defendant's letter acknowledging that the case was settled, and that the acceptance of the defendant's payment of the disputed charges was of no legal effect because it was without consideration since it was the payment of a sum that was already owed.
Faced with Scharfs demand that his attorney fees be taken care of, the plaintiff evidently disavowed the settlement and declined to instruct its attorney to withdraw the case. The defendant has moved to summarily compel compliance with the settlement agreement.
SUMMARY COMPLIANCE WITH A SETTLEMENT AGREEMENT
In the context of a settlement agreement reached during the course of CT Page 5741-en litigation, the court has the authority to summarily enforce the agreement if the material terms of the agreement are not in dispute.Audubon Parking Associates Ltd. Partnership v. Barclay Stubbs, Inc., supra, 225 Conn. 804, 812, 626 A.2d 729 (1993). Here the terms of the settlement agreement are clear and unambiguous and are not in dispute.Id.; see also, DAP Financial Management Co. v. Mor-Fam Electric. Inc.,59 Conn. App. 92, 95 (2000). What is disputed is whether a binding agreement was reached' at all. The defendant claims not only that the parties reached a binding settlement agreement but that the terms of the agreement had been fully performed, at least by him. The plaintiff, by its counsel, makes one argument only[2]: that the agreement is unenforceable for lack of sufficient consideration.
The plaintiff argues that acceptance of a sum due and owing cannot be consideration for a binding contract. See, e.g., Thermoglaze, Inc. v.Moringside Gardens Co., 23 Conn. App. 741, 745 (1991). In the context of an ongoing dispute, particularly one in litigation, over what sum is actually due, the plaintiffs contention is both disingenuous and wrong. The quid pro quo for the defendant's payment of the disputed amount was to be a zero balance on the defendant's account beginning August 1, 2000, and the cessation by the condominium association of any efforts to collect sums claimed to be due up to that date. This included an obligation to end this litigation. As was the case in Audubon ParkingAssociates Ltd. Partnership v. Barclay Stubbs, Inc., supra, 809, such an agreement constitutes an accord, "a contract under which an obligee promises to accept a stated performance in satisfaction of the obligor's existing duty." 2 Restatement (Second), Contracts § 281 (1982).
In this case, there was an offer to settle by the plaintiff and an acceptance of that offer by the defendant with a tender of payment. The plaintiffs attorney, with full knowledge of all of the facts surrounding the negotiations and the litigation, authorized that the tender of payment be accepted and deposited. This was an unequivocal act. Though unlike the accord in Audubon Parking, the terms of this accord were not placed on the record in open court, that is immaterial to the ability of the court to summarily enforce the terms. Indeed the fact that the defendant has already fully complied with the settlement makes this an easier call than the situation in Audubon Parking, supra.
What remains for this court is the question of how to enforce the accord. The defendant, having long since performed his end of the bargain, asks the court to compel the plaintiff to withdraw the lawsuit or, in the alternative, to enter judgment for the defendants. In Audubon
which also involved an agreement to withdraw a lawsuit, the trial judge CT Page 5741-eo summarily enforced the settlement agreement by entering judgment against the party who had attempted to negate the agreement. The Supreme Court held that the trial court properly rendered such a judgment. Id., 812.
Accordingly, this court enters judgment for the defendants.