******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# FRANCIS MARK WALD *v.* ANNE LOUISE CORTLAND-WALD
## (AC 45329)

Bright, C. J., and Moll and Prescott, Js.*

*Syllabus*

The defendant appealed to this court from, inter alia, the trial court's judgment dissolving her marriage to the plaintiff. The court approved a pendente lite agreement in November, 2019, and, in April, 2021, the defendant filed an agreement for dissolution signed by both parties in which they agreed, inter alia, that the plaintiff would transfer twelve months of his G.I. Bill benefits to the defendant for her continuing education and pay 35 percent of his net military pension to her. The defendant thereafter withdrew her request for approval of the agreement, and the court found that the agreement was unenforceable. In October, 2021, the court ordered, inter alia, that the defendant should continue to receive 35 percent of the plaintiff's net military pension and 100 percent of his G.I. Bill benefits. At the time of the judgment in January, 2022, the parties' had one minor child, and they continued to live together in the marital home. The court awarded the parties' joint legal and shared physical custody of their child and ordered the plaintiff to pay $300 per week in child support, which was a downward deviation from the presumptive child support amount according to the child support guidelines, and it further ordered that the child support obligation would not commence until one week after the sale of the marital residence. *Held*:

1. The trial court abused its discretion in calculating the plaintiff's child support obligation:

   a. The trial court erred by decreasing the plaintiff's obligation based on the parties' shared physical custody of the minor child; the court failed to make the requisite findings as required by the applicable regulation (§ 46b-215a-5c (b) (6) (A)) that would support a deviation from the presumptive amount of child support, specifically, that the plaintiff or the defendant would have substantially increased or decreased expenses due to the shared parenting plan and that sufficient funds would remain for the parent receiving support to meet the needs of the child after deviation, or that both parties had substantially equal income.

   b. The trial court improperly delayed the commencement of the plaintiff's obligation to pay child support until after the sale of the parties' residence;

---

* Although Judge Prescott was not present at oral argument, he has read the briefs and appendices and listened to a recording of the oral argument prior to participating in this decision.

the court's order did not reference the child support guidelines or the dollar amount of any expenses to be paid by the plaintiff on behalf of the minor child during the indeterminate period of time until the sale of the residence, and the court did not make a finding on the record, as required by statute (§ 46b-215b), that the application of the guidelines would be inequitable or inappropriate as determined under the deviation criteria.

c. This court remanded the case to the trial court to refashion the entirety of the mosaic of financial orders; because the trial court on remand may issue a child support order that is substantially different from the original order, such an order will necessarily impact the court's related orders pertaining to alimony and property division.

2. The trial court did not abuse its discretion in its rulings on the defendant's motions for contempt:

a. The trial court did not abuse its discretion in declining to adjudicate the plaintiff in contempt for failing to comply with the November, 2019 pendente lite orders; the parties' April, 2021 agreement and the court's October, 2021 order rendered the plaintiff's obligation to comply with the prior pendente lite orders unclear and ambiguous.

b. The trial court properly exercised its discretion in denying the defendant's motion for contempt based on a violation of the automatic orders, as the court found that the plaintiff's practice of buying and selling motor vehicles was done in the usual course of business.

c. The trial court did not abuse its discretion in ordering the plaintiff to pay $1000 in attorney's fees to the defendant after adjudicating him in contempt for failing to comply with its discovery orders; although the defendant's affidavit reflected attorney's fees and expenses of more than $17,000, this affidavit included fees related to the motions for contempt that the court denied.

Argued January 2—officially released July 23, 2024

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of Hartford and tried to the court, *Diana, J.*; judgment dissolving the marriage and granting certain other relief, denying the defendant's motions for contempt, granting the defendant's motion for contempt, and awarding attorney's fees to the defendant, from which the defendant appealed to this court; thereafter, the court, *Diana, J.*, issued a postjudgment modification

of the dissolution judgment, and the defendant filed an amended appeal. *Reversed in part*; *further proceedings*.

*Maria McKeon*, for the appellant (defendant).

*Victoria K. Lanier*, with whom was *Anna Hoberman*, for the appellee (plaintiff).

*Opinion*

PRESCOTT, J. The defendant, Anne Louise Cortland-Wald,[1] appeals from the judgment of the trial court dissolving her marriage to the plaintiff, Francis Mark Wald, and from certain postjudgment financial orders. On appeal, the defendant claims that the court improperly (1) deviated from the child support guidelines in entering its support orders, (2) found that the defendant had an annual earning capacity of $60,000, (3) modified pendente lite support orders, (4) failed to adjudicate the plaintiff in contempt for violating the court's pendente lite and automatic orders, (5) failed to award reasonable attorney's fees after adjudicating the plaintiff in contempt for failing to comply with discovery orders, (6) failed to award attorney's fees to the defendant to prosecute her appeal, and (7) issued a postjudgment modification of the dissolution judgment. We conclude that the court improperly deviated from the child support guidelines to calculate its child support orders and, accordingly, reverse in part the judgment of the court and remand the matter for a new trial on all financial orders. We affirm the judgment of the court as to the defendant's motions for contempt.[2]

---

[1] Although the dissolution complaint lists the defendant's name as Anne Louise Cortland-Wald, she has filed her brief and other documents using the name Anne Cortland. For convenience, we use the name Anne Louise Cortland-Wald, as it appears in the summons and complaint, in this opinion.

[2] Because we remand the matter for a new trial on all financial orders, we need not reach the defendant's claims that the court improperly (1) found that she had an earning capacity of $60,000, (2) modified its pendente lite support orders and (3) issued a postjudgment modification of the dissolution judgment, as these issues necessarily need to be considered on remand. We also need not reach the defendant's claim that the trial court improperly

The following facts and procedural history are relevant to our resolution of the present appeal. The parties were married on December 29, 2000, in Tucson, Arizona. The parties have a son, who was born in 2003, and a daughter, who was born in 2009.[3] On September 30, 2019, the plaintiff commenced this action seeking dissolution of his marriage to the defendant. On October 4, 2019, the defendant filed an answer and cross complaint. On November 13, 2019, the trial court, *Connors, J.*, approved a pendente lite agreement that required, in part, (1) the plaintiff to pay the defendant $500 twice per month and to pay "for all other family expenses including all children's expenses, home expenses and medical expenses" and (2) the defendant to actively search for employment.[4]

On April 23, 2021, the defendant filed an agreement for dissolution signed by both parties, a request for approval of a final agreement without court appearance, and an affidavit in support of her request for entry of judgment of dissolution of marriage.[5] The parties'

failed to award appellate attorney's fees. The award of attorney's fees is dependent upon the relative financial circumstances of the parties, as affected by the court's financial orders; for this reason, this issue must also be reconsidered in light of the new financial orders that the court will issue on remand in this case. See *O'Brien* v. *O'Brien*, 138 Conn. App. 544, 555, 53 A.3d 1039 (2012), cert. denied, 308 Conn. 937, 66 A.3d 500 (2013).

[3] The parties' son had reached the age of majority at the time of judgment in this case.

[4] This agreement provided in relevant part:

"[The plaintiff] shall deposit $500 in accordance with his 2x monthly pay schedule to [the defendant's] bank account. [The defendant] will pay for groceries for the family with these funds. [The plaintiff] will pay for all other family expenses including all children's expenses, home expenses and medical expenses (includ[ing] [the defendant's] anticipated necessary medical expenses) to the extent that his income is sufficient to cover said expenses.

"[The defendant] is actively searching for employment and will continue to actively search. [The defendant] will promptly notify [the plaintiff] through attorneys when she obtains an offer of employment."

[5] The plaintiff also filed an affidavit in support of the request for entry of judgment.

agreement provided, in part, that the plaintiff was required to transfer twelve months of his G.I. Bill benefits[6] to the defendant for her continuing education at Bay Path University and to pay 35 percent of his net military pension to the defendant.

On May 26, 2021, the defendant withdrew her request for approval of the agreement. On September 3, 2021, following a hearing pursuant to *Audubon Parking Associates Ltd. Partnership* v. *Barclay & Stubbs, Inc.*, 225 Conn. 804, 626 A.2d 729 (1993),[7] the trial court, *Carrasquilla, J.*, found the April 23, 2021 agreement unenforceable. The defendant thereafter filed an "ex parte motion for hearing on child support, alimony, exclusive possession [of the marital home], and attorney's fees pendente lite." On October 7, 2021, the trial court, *Diana, J.*, in ruling on this motion, ordered, inter alia, that "[t]he defendant shall continue to receive 35 percent of the plaintiff's net [military] pension as unallocated support" and "100 percent of the G.I. Bill benefits for her continuing education at Bay Path University."[8]

On January 19, 2022, following a four day trial, the trial court, *Diana, J.*, rendered judgment dissolving the parties' marriage. In its memorandum of decision, the court found that "[t]he plaintiff is fifty-two years old

---

[6] The plaintiff was entitled under provisions of the G.I. Bill to thirty-six months of in-state tuition payments and a housing allowance.

[7] A hearing pursuant to *Audubon Parking Associates Ltd. Partnership* v. *Barclay & Stubbs, Inc.*, supra, 225 Conn. 804, "typically follows a party's filing of a motion to enforce a settlement agreement, and the hearing is conducted to determine whether the agreement is sufficiently clear and unambiguous to be summarily enforced." *Doe* v. *Bemer*, 215 Conn. App. 504, 524, 283 A.3d 1074 (2022).

[8] The court entered the following interim orders:

"1. The parties shall have joint legal custody of their minor child . . . primary residence shall remain the marital residence.

"2. The defendant shall continue to receive 35 percent of the plaintiff's net pension as unallocated support.

"3. The defendant shall maintain 100 percent of the G.I. Bill benefits for her continuing education at Bay Path University."

and in good health. He has a bachelor's degree from Arizona State University (2000) and a master's degree in National Security from the Naval Postgraduate School (2009). He enlisted in the Marine Corps in August, 1990, and retired in February, 2013, as a Major, after twenty-three years of service. . . . He moved to Connecticut in 2017, where he currently earns $145,000 [per] year. He also receives an annual military pension of $47,000 and an annual VA disability of $10,000. The plaintiff's current annual income is approximately $202,000. The plaintiff and the defendant continue to reside in the marital residence in Simsbury . . . with their daughter and son, when he is not in San Diego . . . at college. This is the plaintiff's second marriage; he also has a twenty-nine year old daughter.

"The defendant is fifty years old and in good health. She has her bachelor's degree from [State University of New York] Purchase (1997) and a master's degree in educational technology from Arizona State University (1999) and is currently completing her program of study for a master's degree in occupational therapy from Bay Path University. The defendant is not employed and has no earned income. She is receiving 35 percent of the plaintiff's military retirement, the G.I. Bill tuition payment through April, 2022, and a monthly housing allowance. This is the defendant's first marriage." (Footnotes omitted.)

The court also detailed the financial difficulties that the parties faced over the course of their marriage. It addressed the defendant's claim that the plaintiff exercised coercive control over the parties' finances, finding that "[t]he plaintiff supported the defendant in all her educational decisions and never prevented her from doing as she pleased." Regarding payment of the children's college expenses, the court found that the parties "had planned to allow the defendant to use the plaintiff's G.I. Bill in order for the defendant to obtain her PhD.

Then, after the defendant secured gainful employment, the parties would pool their funds to pay for college from their income. After the defendant's original plan to pursue a doctorate changed, she decided on a new plan, but this was delayed because it required her to take science prerequisite classes in order to pursue a master's degree in occupational therapy. The plaintiff sought to secure a well paying job to support the family. The defendant changed her career, requiring more education and delaying her return to the workforce." (Footnote omitted.)

Regarding the defendant's income, the court found that "[t]he defendant needs to complete her program of study, her fieldwork and then take her boards to be certified and secure employment. Her best-case scenario if everything goes according to schedule is that she expects to be employed [in the fall of 2022]. The court finds that the defendant is resourceful, intelligent, and driven. The court finds the defendant to have an earning capacity initially of $60,000 with a real potential to increase that amount in the short term as the professional opportunities vary."

The court found the plaintiff's testimony to be credible and reliable. It found the defendant to be at fault for the breakdown of the marriage because she had engaged in an extramarital affair. The court noted that "[t]he parties and their children have continued to reside together while these [proceedings] have been pending for thirty months and counting. The delay, strain and tension has overwhelmed the defendant and their children."[9]

In its orders, the court awarded the parties joint legal custody and shared physical custody of their minor

[9] At oral argument before this court, counsel for the defendant indicated that the family was still living together in the marital residence.

child.[10] It ordered the plaintiff to pay the defendant $300 per week in child support. The court acknowledged that this was a deviation from the presumptive amount of child support pursuant to the child support guidelines, but it found the presumptive amount of child support of $431 "to be inequitable and inappropriate due to the shared physical custody access schedule for the minor child." The court further ordered that the child support obligation "shall not commence until the week following the sale of the parties' Simsbury residence."[11] The court stated that "the pendente lite orders from October 7, 2021, shall continue with the plaintiff paying the household expenses until the parties' residence in Simsbury is sold and title is transferred." (Footnote omitted.) The court further ordered the plaintiff to pay the defendant $200 per week in periodic alimony, stating that this obligation "shall not commence until the week following the sale of the parties' Simsbury residence."[12] Finally, the court ordered that the plaintiff retain 65 percent of his net military pension income and the defendant retain 35 percent of the plaintiff's net military pension income.

In its memorandum of decision, the court also denied the defendant's motions for contempt filed on November 8 and December 1, 2021. In those motions, the

[10] The court ordered that "[t]he plaintiff shall have access to the minor child every Sunday night until Wednesday morning; the defendant shall have access to the minor child every Wednesday morning until Friday night. The parties shall alternate access to the minor child from Friday night until Sunday night."

[11] The court ordered that "[t]he parties shall list and sell their Simsbury residence. The net proceeds after deducting normal and customary closing costs shall be divided 60 percent to the plaintiff and 40 percent to the defendant. Any dispute between the parties regarding the listing agent, listing price, terms of sale or accepting an offer for sale shall be decided by the plaintiff. No additional liens shall be placed upon this property. The court shall retain jurisdiction over the sale of this property. The defendant may remain living in the residence until it is sold." (Footnote omitted.)

[12] The order provides that the periodic alimony was to be paid "until the first of the following to occur: [the defendant] remarries, the death of either party or five years from [the] date of the first payment."

defendant had claimed that the plaintiff violated the pendente lite agreement that had been approved by the court on November 13, 2019, by failing to pay her $500 twice per month and had violated the automatic orders by buying and selling motor vehicles and other household items without her knowledge or consent. In denying these motions, the court effectively concluded that the parties' April 23, 2021 agreement had rendered the parties' obligation to comply with the prior support orders unclear and ambiguous. The court, however, granted the defendant's motion for contempt filed on December 21, 2021, in which she claimed that the plaintiff had violated certain discovery orders. Accordingly, it ordered the plaintiff to pay attorney's fees in the amount of $1000 to the defendant based on this finding of contempt.

The defendant filed the present appeal on February 28, 2022, and an amended appeal on December 19, 2022. Additional facts will be set forth as necessary.

I

The defendant first claims that, in rendering its child support orders, the court improperly deviated from the presumptive amount of child support without using a permissible deviation criterion and by delaying the commencement of child support until the sale of the parties' residence. We agree with the defendant that the court improperly deviated from the presumptive amount of child support without using a permissible deviation criterion. We also agree that the court improperly ordered that the plaintiff's child support obligation would not commence until the sale of the parties' residence. We, therefore, remand this matter for a new trial on all financial orders.[13] See *Renstrup* v. *Renstrup*, 217 Conn.

---

[13] In light of this conclusion, we need not address the defendant's additional arguments that the trial court improperly failed to award a portion of the plaintiff's bonuses as part of the child support award and failed to apply the correct percentages for sharing unreimbursed medical expenses and childcare costs as required by the child support guidelines.

App. 252, 284, 287 A.3d 1095 ("the mosaic doctrine . . . allows reviewing courts to remand cases for reconsideration of all financial orders even though the review process might reveal a flaw only in the alimony, property division or child support awards" (internal quotation marks omitted)), cert. denied, 346 Conn. 915, 290 A.3d 374 (2023).

Before addressing the defendant's claims regarding child support, we first note that, "[n]otwithstanding the great deference accorded the trial court in dissolution proceedings, a trial court's ruling . . . may be reversed if . . . the trial court applies the wrong standard of law. . . . The question of whether, and to what extent, the child support guidelines apply . . . is a question of law over which this court should exercise plenary review. . . . Furthermore, although the trial court is vested with broad discretion in domestic relations matters, with respect to child support, the parameters of the court's discretion have been somewhat limited by the factors set forth in the child support guidelines." (Citations omitted; internal quotation marks omitted.) Id., 259–60.

A

We first consider whether the court improperly deviated from the child support guidelines without using a permissible deviation criterion. As indicated earlier in this opinion, the court found the presumptive amount of child support of $431 "to be inequitable and inappropriate due to the shared physical custody access schedule for the minor child." The trial court, therefore, ordered the plaintiff to pay the defendant $300 per week in child support, commencing after the sale of the parties' residence. The defendant argues that the court, in so doing, improperly deviated from the presumptive amount of child support without using a permissible deviation criterion.

We begin with a review of the statutory scheme regarding child support and the guidelines. General Statutes § 46b-84 provides in relevant part: "(a) Upon or subsequent to the . . . dissolution of any marriage . . . the parents of a minor child of the marriage, shall maintain the child according to their respective abilities, if the child is in need of maintenance. Any post judgment procedure afforded by chapter 906 shall be available to secure the present and future financial interests of a party in connection with a final order for the periodic payment of child support. . . .

"(d) In determining whether a child is in need of maintenance and, if in need, the respective abilities of the parents to provide such maintenance and the amount thereof, the court shall consider the age, health, station, occupation, earning capacity, amount and sources of income, estate, vocational skills and employability of each of the parents, and the age, health, station, occupation, educational status and expectation, amount and sources of income, vocational skills, employability, estate and needs of the child."

General Statutes § 46b-215a provides for a commission "to issue child support and arrearage guidelines to ensure the appropriateness of criteria for the establishment of child support awards and to review and issue updated guidelines every four years." General Statutes § 46b-215b (a) provides in relevant part that the "guidelines issued pursuant to section 46b-215a . . . and in effect on the date of the support determination shall be considered in all determinations of child support award amounts . . . . In all such determinations, there shall be a rebuttable presumption that the amount of such awards which resulted from the application of such guidelines is the amount to be ordered. *A specific finding on the record at a hearing, or in a written judgment, order, or memorandum of decision of the court, that the application of the guidelines*

*would be inequitable or inappropriate in a particular case,* as determined under the deviation criteria established by the [c]ommission . . . under section 46b-215a, *shall be required in order to rebut the presumption in such case.*" (Emphasis added.) See also Regs., Conn. State Agencies § 46b-215a-5c (a) ("The current support . . . amounts calculated under [the child support guidelines] . . . are presumed to be the correct amounts to be ordered. The presumption regarding each such amount may be rebutted by a specific finding on the record that such amount would be inequitable or inappropriate in a particular case. . . . Any such finding shall state the amount that would have been required under such sections and include a factual finding to justify the variance.").

"A court's failure to substantiate its decision to adjust the presumptive basic child support order by making the explicit findings in the record that are expressly required by the guidelines constitutes an incorrect application of the law . . . ." *Renstrup* v. *Renstrup,* supra, 217 Conn. App. 272. Our Supreme Court "has stated that the reason why a trial court must make an on-the-record finding of the presumptive support amount before applying the deviation criteria is to facilitate appellate review in those cases in which the trial court finds that a deviation is justified. . . . In other words, the finding will enable an appellate court to compare the ultimate order with the guideline amount and make a more informed decision on a claim that the amount of the deviation, rather than the fact of a deviation, constituted an abuse of discretion." (Citation omitted; internal quotation marks omitted.) *Kiniry* v. *Kiniry,* 299 Conn. 308, 320, 9 A.3d 708 (2010).

"Only the deviation criteria stated in . . . subdivisions (1) to (6), inclusive, of subsection (b) of [§ 46b-215a-5c of the Regulations of Connecticut State Agencies] . . . shall establish sufficient bases [to justify a

deviation from the presumptive amount of child support set forth in the guidelines].”[14] Regs., Conn. State Agencies § 46b-215a-5c (a). The deviation criteria listed in § 46b-215a-5c (b) (6) of the regulations, titled “Special circumstances,” provides that, “[i]n some cases, there may be special circumstances not otherwise addressed in this section in which deviation from presumptive support amounts may be warranted for reasons of equity.” Section 46b-215a-5c (b) (6) (A) of the regulations lists shared physical custody as one of the special circumstances that may justify a deviation from the presumptive support amount, providing that, “[w]hen a shared physical custody arrangement exists, it may be appropriate to deviate from the presumptive amounts when: (i) such arrangement substantially: (I) reduces expenses for the child, for the parent with the lower net weekly income, or (II) increases expenses for the child, for the parent with the higher net weekly income; and (ii) sufficient funds remain for the parent receiving support to meet the needs of the child after deviation; or (iii) both parents have substantially equal income.”

The defendant contends that the trial court improperly deviated from the child support guidelines based on the special circumstance of “shared physical custody” as set forth in § 46b-215a-5c (b) (6) (A) of the regulations. She contends that no evidence was introduced at trial that either party would have substantially increased or decreased expenses by any type of shared parenting plan. The plaintiff counters that, because he is responsible for the minor child more than one half of the time, the shared physical custody arrangement substantially increases the expenses he incurs on her

_____

[14] The deviation criteria set forth in the regulations are: “(1) Other financial resources available to a parent . . . (2) [e]xtraordinary expenses for care and maintenance of the child . . . (3) [e]xtraordinary parental expenses . . . (4) [n]eeds of a parent’s other dependents . . . (5) [c]oordination of total family support . . . [and] (6) [s]pecial circumstances . . . .” Regs., Conn. State Agencies § 46b-215a-5c (b).

behalf. He further argues that, until the marital residence is sold, he is responsible for 100 percent of the housing expenses and, thus, the defendant has sufficient funds to meet the needs of the child after the deviation.[15] We agree with the defendant.

A review of the court's memorandum of decision in the present case reveals that, although it cited the "shared physical custody access schedule for the minor child" as the reason it deviated from the presumptive support amount set forth in the guidelines, it did not make a specific finding to justify the downward deviation based on this criterion. It is, therefore, unclear how the trial court concluded that the plaintiff or the defendant would have substantially increased or decreased expenses due to the shared parenting plan and that sufficient funds would remain for the parent receiving support to meet the needs of the child after deviation, or that both parties have substantially equal income, as required by § 46b-215a-5c (b) (6) (A) of the regulations.

[15] As to the plaintiff's arguments, we first note that the court's order granted both parties approximately equal access to the minor child, with the plaintiff having access one more night per week than the defendant. See footnote 10 of this opinion. Furthermore, the preamble to the child support guidelines provides, as to "shared physical custody," that "[t]he commission continues to reject the notion of a mathematical formula based on the time spent with each parent to determine support amounts in the shared physical custody context. Application of such a formula would tend to shift the focus away from the best interests of the child and more toward financial considerations, which would be inconsistent with Connecticut law." Child Support and Arrearage Guidelines (2015), preamble, § (g) (3), p. xiii.

Finally, we note that, in its decision, the court stated that "[t]hese parties remain in one household out of necessity as they cannot afford to separate at this time." Inasmuch as both parties continue to reside at the marital residence, the plaintiff's payment of household expenses necessarily includes payment of his own household expenses. Further, the court's order specifies that any disputes between the parties regarding the listing agent, listing price, terms of sale or acceptance of an offer of sale are to be decided by the plaintiff. See footnote 11 of this opinion.

The failure to make the required finding is problematic because the parties strenuously disagree regarding the nature of the defendant's income and earning capacity and how that factored into the trial court's decision to deviate from the guidelines.[16] In this regard, the defendant contends that she has no income, except for the

[16] In its memorandum of decision, the court found that the defendant had an earning capacity of $60,000. The defendant argues that, although the court did not cite her earning capacity as the reason that it deviated from the child support guidelines, the court factored her earning capacity into its decision to deviate from the guidelines.

A parent's earning capacity is considered part of the "[o]ther financial resources available to a parent" that would justify a deviation from the child support guidelines. See Regs., Conn. State Agencies § 46b-215a-5c (b) (1) (B). "A party's earning capacity is a deviation criterion under the guidelines, and, therefore, a court must specifically invoke the criterion and specifically explain its justification for calculating a party's child support obligation by virtue of the criterion instead of by virtue of the procedures outlined in the guidelines." (Internal quotation marks omitted.) *Renstrup* v. *Renstrup*, supra, 217 Conn. App. 268. In the present case, although the court found that the defendant had an earning capacity of $60,000, that finding was not the basis for its deviation from the child support guidelines. Rather, the court specifically found that the presumptive amount of child support would be inequitable or inappropriate "due to the shared physical custody access schedule for the minor child." This deviation criterion is found in § 46b-215a-5c (b) (6) (A) of the regulations.

On November 8, 2022, the defendant filed a motion for permission to file a late motion for articulation in which she requested, in part, that the court articulate "the factual and legal basis for imputing $60,000 income to [her] when she was in a full-time graduate program and could not earn any income." On December 7, 2022, this court denied the defendant's motion for permission to file a late motion for articulation and ordered, sua sponte, that the court articulate the basis for its finding that the defendant had an earning capacity of $60,000. The court issued its articulation on December 15, 2022.

Notwithstanding the defendant's motion for permission to file a late motion for articulation and the court's response to this court's sua sponte articulation order, the defendant did not request that the court articulate whether its decision to deviate from the child support guidelines was based, in part, on its finding that the defendant had an earning capacity of $60,000. "Absent an articulation regarding the legal basis for the trial court's decision, a claim of error cannot be predicated on the assumption that the trial court acted erroneously." *In re Kyara H.*, 147 Conn. App. 855, 871 n.11, 83 A.3d 1264, cert. denied, 311 Conn. 923, 86 A.3d 468 (2014). Accordingly, we limit our consideration to whether the court improperly deviated from the

$14,400 that she receives from the defendant's military pension, while the plaintiff claims that the defendant was receiving the entirety of his G.I. Bill for her education, which included a housing allowance of up to $1650 monthly, as well as 35 percent of his military pension equaling approximately $1200 monthly.

The plaintiff further argues that, pursuant to the judgment, as long as the parties remain in the marital home, the defendant has no housing or utility expenses, as he is responsible for all household expenses. Regardless of the parties' disagreement regarding the defendant's income, the court failed to make the requisite findings that would support a deviation based on the shared physical custody of the parties' minor child, specifically, that the plaintiff or the defendant would have substantially increased or decreased expenses due to the shared parenting plan, and that sufficient funds would remain for the parent receiving support to meet the needs of the child after deviation, or that both parties have substantially equal income, as required by § 46b-215a-5c (b) (6) (A) of the regulations. Without the specific findings that would support a deviation based on the shared physical custody of the minor child, it is impossible to ascertain how the court determined that application of the child support guidelines was inequitable and inappropriate due to this criterion. We conclude, therefore, that the court improperly deviated from the presumptive amount of child support without making the required findings. See *Renstrup* v. *Renstrup*, supra, 217 Conn. App. 272–73 (trial court abused its discretion when it deviated from child support guidelines without making required findings); *Zheng* v. *Xia*, 204 Conn. App. 302, 308, 312, 253 A.3d 69 (2021) (trial court abused its discretion when its reason for deviating from guidelines

guidelines based on the special circumstance of "shared physical custody" as indicated by the court in its memorandum of decision and as set forth in § 46b-215a-5c (b) (6) (A) of the regulations.

failed as matter of law and it made no other findings explaining why guidelines were inequitable or inappropriate).

B

We next consider the defendant's claim that the court improperly delayed the commencement of child support payments until the sale of the parties' residence.[17] She contends that, because the court specifically ordered that payment of child support would not commence until after the house was sold, it effectively forced her to choose between taking an appeal or receiving child support. The plaintiff counters that the court properly awarded child support by requiring him to be responsible for all household expenses in the marital home where the parties continue to reside together. We conclude that the court improperly delayed the commencement of child support until the sale of the parties' residence.

As set forth earlier in this opinion, the court ordered the plaintiff to pay the defendant $300 per week in child support. The court further ordered that the child support obligation "shall not commence until the week following the sale of the parties' Simsbury residence" and that "the pendente lite orders from October 7, 2021, shall continue with the plaintiff paying the household expenses until the parties' residence in Simsbury is sold." (Footnote omitted.)

On June 22, 2022, the defendant filed a motion to terminate the appellate stay in which she requested, inter alia, "that the automatic stay be terminated with

---

[17] In her brief, the defendant also argues that the court improperly delayed commencement of *alimony* until the residence is sold. Because we conclude that the court improperly delayed the commencement of child support until after the sale of the parties' residence, we need not address whether the court also erred in delaying commencement of alimony until after the sale of the parties' residence.

respect to the . . . child support [order] which currently [requires] that no payment be made until the marital home is sold . . . .” The plaintiff objected to the defendant’s motion, contending that she “seeks relief of a stay that does not exist” and appears to be attempting a “backdoor approach to seeking a modification of the orders that are currently pending appeal.” The plaintiff further argued that the mosaic of the financial orders in the court’s memorandum of decision would be undermined if the court granted the defendant’s motion.

A hearing on the defendant’s motion to terminate the appellate stay took place on August 22, 2022. At that hearing, the defendant testified, inter alia, that the plaintiff was not paying for her groceries, car expenses, dental expenses, clothing for her work, student loans, and some activities for her daughter. The plaintiff acknowledged during this hearing that he had received a promotion since the date of the dissolution judgment, resulting in a raise of $25,000 annually.[18] At the conclusion of the hearing, the court stated: “[The defendant] is entitled to take an appeal, but what that did with the structure of this since she’s allowed to stay in the house and she’s relieved of paying those expenses, she—there is a benefit of being able to live in the house without paying the household expenses. . . . And now we fast-forward . . . several months and here we are today, and [the plaintiff’s] got a better situation, and [the defendant’s] got a worse situation. That’s the reality.”

Following the hearing, the trial court denied the defendant’s motion in an order dated August 22, 2022,

---

[18] Although the plaintiff did not list any bonuses in his financial affidavit filed in connection with the defendant’s motion to terminate the appellate stay, he included a note on the affidavit indicating: “2021 net bonus received 3/15/22 $13,299.75—used to pay IRS for 2021 tax due ($9357) + $3000 atty fees.”

finding that "the mosaic of financial orders in the decision provide the defendant with no financial obligation for the household expenses where she resides. The plaintiff is solely paying these expenses." The court further clarified that the financial obligations for the term "household expenses" as used in the memorandum of decision include "the mortgage, real estate taxes and insurance, the utilities (oil, electric, water and sewer), household improvements, home phone, Internet and trash collection."[19] The court thereafter issued a supplemental order stating that "[n]o automatic stay applies to child support . . . nor was a stay ever ordered," and "[t]he plaintiff's financial support to the defendant is being paid by way of the household expenses on real property that she owns an equitable interest in."

We agree with the trial court that no automatic appellate stay applies to orders of child support. See Practice Book § 61-11 (c) ("[u]nless otherwise ordered, no automatic stay shall apply . . . to orders of periodic alimony, support, custody or visitation in family matters"). Furthermore, the trial court's order specifically stated that it did not order a stay in this case. The issue, therefore, is whether the court's order, providing that the plaintiff's child support obligation did not commence until the sale of the parties' residence and that, until that time, the plaintiff was responsible for payment of the household expenses where the parties reside, complies with the applicable procedures regarding the payment of child support. We conclude that it does not.[20]

---

[19] At the hearing on August 22, 2022, the court similarly stated: "I'm going to clarify something that I think needs to be clarified based on the testimony. When the court referred to household expenses, the court is referring to mortgage, [principal] interest, taxes, insurance, any special assessments on the real estate if they exist, the utilities at the residence, including oil, electric, gas, water, or sewer, any household improvements, any home phone, including any Internet at the house, any trash collection that may exist."

[20] To the extent that the defendant contends, as part of her argument, that the court improperly denied her motion to terminate the appellate stay,

We begin our analysis by noting that "[t]he fundamental purpose of child support . . . is to provide for the care and well-being of minor children . . . . Thus, the [statutory] duty on divorced parents to support the minor children of their marriage . . . creates a corresponding *right in the children* to such support." (Citation omitted; emphasis in original; internal quotation marks omitted.) *Blondeau* v. *Baltierra*, 337 Conn. 127, 172, 252 A.3d 317 (2020). "Both state and national policy has been, and continues to be, to ensure that all parents support their children and that children who do not live with their parents benefit from adequate and enforceable orders of child support. . . . Child support is now widely recognized as an essential component of an effective and comprehensive family income security strategy. . . . As with any income source, the effectiveness of child support in meeting the needs of children is, of necessity, increased when payments are made regularly and without interruption." (Citations omitted; internal quotation marks omitted.) *Mulholland* v. *Mulholland,* 229 Conn. 643, 651–52, 643 A.2d 246 (1994). "Where the need for child support is established and ordered by the court, it is of the utmost importance for the welfare of the child that such payments be made in a timely fashion. It is also in the interest of society that the child be supported by those obligated to support the child and that the child not be required to seek public assistance to satisfy those needs unless otherwise necessary." (Internal quotation marks omitted.) Id., 652.

we note that "[i]ssues regarding a stay of execution cannot be raised on direct appeal. The sole remedy of any party desiring . . . [review of] . . . an order concerning a stay of execution shall be by motion for review . . . ." (Internal quotation marks omitted.) *Lawrence* v. *Cords,* 165 Conn. App. 473, 479, 139 A.3d 778, cert. denied, 322 Conn. 907, 140 A.3d 221 (2016). In this regard, on September 2, 2022, the defendant filed a motion for review of the court's August 22, 2022, order denying her motion to terminate the appellate stay and her motion for appellate attorney's fees. On October 5, 2022, this court denied this motion. On December 13, 2022, this court denied

In the present case, the trial court ordered that the plaintiff's child support obligation would not commence until the week following the sale of the parties' Simsbury residence and that the pendente lite orders from October 7, 2021, continued in effect with the plaintiff paying the household expenses until the parties' residence was sold. It is unclear, based on the foregoing, whether the court was ordering that the plaintiff had no child support obligation until the sale of the parties' residence or whether it was ordering a temporary, 100 percent downward deviation from the child support guidelines during an indeterminate period until the sale of the parties' home. Under either of these scenarios, we conclude that the court improperly delayed commencement of the plaintiff's obligation to pay child support.

As previously set forth in this opinion, "the [child support] guidelines provide that the support amounts calculated thereunder are the correct amounts to be ordered by the court unless rebutted by a specific finding on the record that the presumptive support amount would be inequitable or inappropriate. . . . The finding *must* include a statement of the presumptive support amount and explain how application of the deviation criteria justifies the variance." (Citation omitted; emphasis in original; internal quotation marks omitted.) *O'Brien* v. *O'Brien*, 138 Conn. App. 544, 550, 53 A.3d 1039 (2012), cert. denied, 308 Conn. 937, 66 A.3d 500 (2013).

The court's order in the present case does not reference the child support guidelines or the dollar amount of any expenses to be paid by the plaintiff on behalf of the minor child during the indeterminate period until the sale of the parties' residence. Although the plaintiff

the defendant's motion for reconsideration en banc of this court's order denying her motion for review.

contends that his obligation to pay the household expenses totaled $940 weekly, the court's order is silent regarding the percentage of household expenses that are attributable to the child, the plaintiff and the defendant.[21] Furthermore, with regard to the indeterminate period prior to the sale of the parties' residence, the court did not make a finding on the record, as required by § 46b-215b, that the application of the guidelines would be inequitable or inappropriate as determined under the deviation criteria established by the Commission for Child Support Guidelines. Considering the applicable statutory framework, the child support guidelines previously set forth, as well as the fundamental purpose of child support " 'to provide for the care and well-being of minor children' "; *Blondeau* v. *Baltierra,* supra, 337 Conn. 172; we conclude that the trial court improperly ordered that the plaintiff's child support obligation did not commence until the sale of the parties' residence and that, during the indeterminate period of time until the sale of the marital residence, the plaintiff's support to the defendant was being paid by way of the household expenses where the parties both reside. See *Maturo* v. *Maturo,* 296 Conn. 80, 118, 995 A.2d 1 (2010) ("[t]he . . . guidelines shall be considered in *all* determinations of child support amounts within the state" (emphasis in original; internal quotation marks omitted)); *Y. H.* v. *J. B.,* 224 Conn. App.

---

[21] The trial court made no finding regarding the total amount to be paid by the plaintiff as household expenses. The plaintiff's financial affidavit, however, provides the following weekly expenses that are included in the court's definition of household expenses:

| Home (Rent or mortgage): | $696 |
| --- | --- |
| Home (Household improvements): | 52 |
| Utilities (Oil) | 57 |
| Utilities (Electricity) | 54 |
| Utilities (Water and Sewer) | 28 |
| Utilities (Telephone/Cell): | 29 |
| Utilities (TV/Internet) | 24 |
| | $940 |

793, 803, 313 A.3d 1245 (2024) (trial court abused its discretion in declining to award child support without reference to child support guidelines based on its conclusion that support had not been requested); *Chowdhury* v. *Masiat*, 161 Conn. App. 314, 322–23, 128 A.3d 545 (2015) (trial court, without reference to applicable statutes and child support guidelines, improperly declined to award child support for parties' oldest child); *O'Brien* v. *O'Brien*, supra, 138 Conn. App. 555 (trial court abused its discretion in entering unallocated award of alimony and child support without considering and applying guidelines or principles espoused therein).

C

In light of our conclusion that the trial court improperly deviated from the child support guidelines without using a permissible deviation criterion and delayed the commencement of the plaintiff's child support obligation until the sale of the parties' residence, we turn to the question of the appropriate relief. "Individual financial orders in a dissolution action are part of the carefully crafted mosaic that comprises the entire asset reallocation plan. . . . Under the mosaic doctrine, financial orders should not be viewed as a collection of single disconnected occurrences, but rather as a seamless collection of interdependent elements. Consistent with that approach, our courts have utilized the mosaic doctrine as a remedial device that allows reviewing courts to remand cases for reconsideration of all financial orders even though the review process might reveal a flaw only in the alimony, property distribution or child support awards. . . .

"Every improper order, however, does not necessarily merit a reconsideration of all of the trial court's financial orders. A financial order is severable when it is not in any way interdependent with other orders and is not improperly based on a factor that is linked to other

factors. . . . In other words, an order is severable if its impropriety does not place the correctness of the other orders in question. . . . Determining whether an order is severable from the other financial orders in a dissolution case is a highly fact bound inquiry." (Citation omitted; internal quotation marks omitted.) *Renstrup* v. *Renstrup*, supra, 217 Conn. App. 284.

Upon remand in the present case, the court may issue a child support order that is substantially different from the original order, including a potential arrearage. Any such order will necessarily impact the court's related orders pertaining to alimony and property division. See *Valentine* v. *Valentine*, 149 Conn. App. 799, 802–803, 90 A.3d 300 (2014) ("In dissolution proceedings, the court must fashion its financial awards in accordance with the criteria set forth in [General Statutes] § 46b-81 (division of marital property), [General Statutes] § 46b-82 (alimony) and § 46b-84 (child support). All three statutory provisions require consideration of the parties' *amount and sources of income* in determining the appropriate division of property and size of any child support or alimony award." (Emphasis in original; internal quotation marks omitted.)). Because it is uncertain whether the court's other financial orders will remain intact after reconsidering the child support order in a manner consistent with this opinion, we conclude that the entirety of the mosaic must be refashioned. See *Renstrup* v. *Renstrup*, supra, 217 Conn. App. 285. Accordingly, the court must consider all the financial orders on remand, including the alimony and property distribution awards.

II

The defendant next raises three issues pertaining to the court's rulings on her motions for contempt. Specifically, the defendant claims that the court abused its discretion by failing (1) to hold the plaintiff in contempt

for failing to comply with the pendente lite orders dated November, 2019, (2) to hold the plaintiff in contempt based on his failure to comply with the automatic orders, and (3) to award reasonable attorney's fees after holding the plaintiff in contempt for his refusal to comply with discovery orders. We address these claims in turn.

The following additional facts are relevant to our analysis of these claims. As previously set forth in this opinion, on November 13, 2019, the trial court, *Connors, J.*, approved a pendente lite agreement that required, in part, (1) the plaintiff to pay the defendant $500 twice per month and to pay "for all other family expenses including all children's expenses, home expenses and medical expenses" and (2) the defendant to actively search for employment. See footnote 4 of this opinion. On April 23, 2021, the defendant filed an agreement for dissolution signed by both parties, a request for approval of a final agreement without a court appearance, and an affidavit in support of her request for the entry of a judgment of dissolution of marriage.

The parties' agreement, which set forth the terms for dissolving the parties' marriage, included a requirement that the plaintiff transfer twelve months of his G.I. Bill benefits to the defendant and pay the defendant 35 percent of his military pension. This agreement further provided that the defendant was entitled to 100 percent of the value of the Pioneer Investment Account listed on the parties' financial affidavits. Article XXII of this agreement provided that the agreement "shall become effective and binding immediately upon its execution by the parties without regard to the status of the dissolution action." Article XXIII of this agreement contained a "Gap in Time" clause pursuant to which the parties agreed to be bound by the agreement notwithstanding that there may be a gap in time between the date of the execution of the agreement and its approval by the

court.[22] On May 26, 2021, the defendant withdrew her request for approval of the agreement. On September 3, 2021, the trial court, *Carrasquilla, J.*, found the April 23, 2021 agreement unenforceable because it had been withdrawn by the defendant before she could be canvassed regarding whether it was fair and equitable.[23]

The defendant thereafter filed an "ex parte motion for hearing on child support, alimony, exclusive possession [of the marital home], and attorney's fees pendente lite." On October 7, 2021, the trial court, *Diana, J.*, in ruling on this motion, ordered, inter alia, that "[t]he defendant shall continue to receive 35 percent of the plaintiff's net pension as unallocated support" and the "defendant shall maintain 100 percent of the G.I. Bill benefits for her continuing education at Bay Path University." See footnote 8 of this opinion.

On November 8, 2021, the defendant filed a motion for contempt claiming that the plaintiff wilfully violated the November 13, 2019 pendente lite orders by failing to pay her $500 twice per month and by failing to pay for certain household expenses. She also contended that the plaintiff repeatedly had violated the automatic orders by buying and selling motor vehicles and other

---

[22] Article XXIII of the agreement, captioned "Gap in Time Clause," provides:

"Each party has executed this Agreement for Judgment knowingly, intelligently and voluntarily, with the assistance of effective and competent counsel, free of any duress, coercion, or undue influence.

"The parties understand, recognize, and acknowledge that there may be a gap in time between the date of the execution of this Agreement for Judgment and its approval by the court. Notwithstanding any such gap in time, the parties agree that they shall each be bound by the terms of this Agreement of Judgment in the same manner as if this Agreement of Judgment had been filed with, and approved by, the Connecticut Superior Court. Until such time as this Agreement of Judgment is approved by the Connecticut Superior Court, it shall have the same full force and effect as an Order of the Court. This shall include, but not be limited to, the ability of each party to seek the appropriate remedies under section 46b-87 of the Connecticut General Statutes."

[23] Neither party challenges the court's decision in this regard.

household items without her knowledge and consent. On December 1, 2021, the defendant filed another motion for contempt claiming that the plaintiff had violated the automatic orders by buying another vehicle without her consent. On December 21, 2021, the defendant filed a motion for contempt based on the plaintiff's failure to provide complete discovery to her.

In its memorandum of decision, the court denied the motion for contempt regarding the plaintiff's failure to comply with the November 13, 2019 pendente lite orders, specifically finding that "none of the court orders between the parties were clear and unambiguous after the parties signed their divorce agreement in April, 2021." The court further found that "the plaintiff did not fail to comply with the court orders. . . . The plaintiff has paid 35 percent of his military retirement to the defendant since April, 2021, based upon the parties' agreement that was not found to be unenforceable until September, 2021. . . ." (Footnote omitted.) The court also denied the defendant's motion for contempt based on the plaintiff's failure to comply with the automatic orders and granted the defendant's motion for contempt as to the discovery orders, finding, inter alia, that the plaintiff wilfully had violated the discovery orders by not producing documents as ordered. The court ordered the plaintiff to pay the defendant attorney's fees in the amount of $1000 based on this finding of contempt.

A

The defendant first claims that the court abused its discretion by failing to adjudicate the plaintiff in contempt for failing to comply with the pendente lite orders dated November 13, 2019. The plaintiff counters that the court properly determined that none of the court orders were clear and unambiguous after the parties signed the April 23, 2021 agreement and that, without

a determination that the orders were clear and unambiguous, there can be no finding of contempt. We agree with the plaintiff.

Our review of this claim is guided by the following principles. "Contempt is a disobedience to the rules and orders of a court which has power to punish for such an offense. . . . [C]ivil contempt is committed when a person violates an order of court which requires that person in specific and definite language to do or refrain from doing an act or series of acts. . . . In part because the contempt remedy is particularly harsh . . . such punishment should not rest upon implication or conjecture, [and] the language [of the court order] declaring . . . rights should be clear, or imposing burdens [should be] specific and unequivocal, so that the parties may not be misled thereby. . . . To constitute contempt, it is not enough that a party has merely violated a court order; the violation must be wilful. . . . It is the burden of the party seeking an order of contempt to prove, by clear and convincing evidence, both a clear and unambiguous directive to the alleged contemnor and the alleged contemnor's wilful noncompliance with that directive. . . . The question of whether the underlying order is clear and unambiguous is a legal inquiry subject to de novo review. . . . If we answer that question affirmatively, we then review the trial court's determination that the violation was wilful under the abuse of discretion standard." (Internal quotation marks omitted.) *Mitchell* v. *Bogonos*, 218 Conn. App. 59, 68–69, 290 A.3d 825 (2023). "[A]n order of the court must be obeyed until it has been modified or successfully challenged." (Internal quotation marks omitted.) *Sablosky* v. *Sablosky*, 258 Conn. 713, 719, 784 A.2d 890 (2001).

According to the defendant, the court improperly determined that "none of the court orders between the parties were clear and unambiguous after the parties

signed their divorce agreement in April, 2021." This is so, the defendant claims, because the April 23, 2021 agreement was found to be unenforceable on September 3, 2021. The defendant contends that, once the April 23, 2021 agreement was found to be unenforceable, the plaintiff had an obligation to pay all amounts due under the November, 2019 pendente lite order yet refused to do so from April, 2021 through the end of trial in January, 2022. At oral argument before this court, the defendant argued that the trial court, in issuing its orders, forgot about the November, 2019 pendente lite order.

The plaintiff counters that he complied with the November, 2019 order until the parties executed the agreement for dissolution in April, 2021, and that the agreement for dissolution implicitly terminated the parties' obligations under the November, 2019 order. The plaintiff relies on the "Gap in Time" clause in the parties' agreement, pursuant to which the parties agreed to be bound by the agreement notwithstanding a gap in time between the date of the execution of the agreement and its approval by the court. See footnote 22 of this opinion. The plaintiff further contends that the actions of the defendant, specifically, her withdrawal of funds from the parties' joint investment account, which took place after she withdrew her affidavit in support of approval of the April, 2021 agreement, demonstrate that she was acting in accordance with, and received the benefit from, the April, 2021 agreement.

The issue before this court is whether, in light of the agreement executed by the parties in April, 2021, the court properly concluded that the November, 2019 order was no longer clear and unambiguous.[24] In this

---

[24] We disagree with the defendant's contention that the court forgot about the November, 2019 agreement. We conclude, rather, that the trial court's statement that "none of the court's orders were clear and unambiguous after the parties signed their divorce agreement in April, 2021," reflected its understanding that, in light of the April, 2021 agreement, any orders prior to that time were no longer clear and unambiguous. See *O'Brien* v. *O'Brien*, 326 Conn. 81, 113, 161 A.3d 1236 (2017) ("[w]hen construing a trial court's

regard, the court specifically found that both parties had acted in accordance with the April, 2021 agreement, stating: "The parties signed an agreement to dissolve their marriage on April 21, 2021. Up until then the plaintiff has paid all the household bills. In April, 2021, he started paying 35 percent of his military retirement to the defendant based upon their divorce agreement. This same amount was court-ordered to be paid after a hearing in October, 2021. On May 26, [2021], the defendant withdrew her affidavit in support of the request for approval of the final agreement. After trial briefs were filed and a . . . hearing [pursuant to *Audubon Parking Associates Ltd. Partnership* v. *Barclay & Stubbs, Inc.*, supra, 225 Conn. 804] conducted, the agreement was found to be unenforceable on September 3, 2021. On May 28, 2021, the defendant withdrew $33,880 from the parties' joint investment account leaving a balance of $52.22. This asset was going to be retained by her as part of their divorce agreement that the defendant had vacated. She did not return these funds but used them as she decided. Now the defendant is seeking retroactive financial orders based upon the pendente lite agreement from November, 2019, which required her to actively search for employment. This selective enforcement request, seeking to have the plaintiff follow the first agreement while she benefitted substantially from the second agreement that she had vacated, lacks merit."[25] (Footnotes omitted.)

memorandum of decision, [e]ffect must be given to that which is clearly implied as well as to that which is expressed" (internal quotation marks omitted)).

[25] In denying the defendant's motion for contempt, the court later stated that it "gives great latitude to the conduct after the parties had a signed divorce agreement. The court finds that the defendant cashed in and retained their entire joint investment account after she sought to vacate their April, 2021 divorce agreement which gave her that same asset. She did not return those joint funds. The defendant's claims about not having money during this time to buy their daughter a winter coat is unsupported by the facts. She had $5000 to spend on Botox, the spa, nails, and products from April, 2021, through December, 2021. In October, 2021, the plaintiff was ordered

We conclude, under the circumstances of this case, that the plaintiff's obligation to comply with the November, 2019 pendente lite agreement was rendered unclear by the April, 2021 agreement. Indeed, the April, 2021 agreement provided: "Notwithstanding any . . . gap in time [between the date of the execution of this Agreement for Judgment and its approval by the court] the parties agree that they shall each be bound by the terms of this Agreement of Judgment in the same manner as if this Agreement of Judgment had been filed with, and approved by, the Connecticut Superior Court. Until such time as this Agreement of Judgment is approved by the Connecticut Superior Court, it shall have the same full force and effect as an Order of the court." The April, 2021 agreement, however, was silent regarding the parties' obligation to comply with the court's 2019 pendente lite orders if the court declined to approve the parties' 2021 agreement.

Furthermore, we also note that the court issued an order on October 7, 2021, prior to the filing of the defendant's motion for contempt, requiring the plaintiff to pay the defendant 35 percent of his net pension as unallocated support and providing that the defendant was to maintain 100 percent of the G.I. Bill benefit for her continuing education. Under these circumstances, it was unclear whether the plaintiff was still obligated to pay the defendant $500 twice per month and to pay all other family expenses pursuant to the November, 2019 agreement.

The present case is similar to *Forcier* v. *Sunnydale Developers, LLC*, 84 Conn. App. 858, 862, 856 A.2d 416 (2004). In *Forcier*, we concluded that a defendant could not be adjudicated in contempt for violating the underlying judgment because the "court's subsequent orders

by the court to pay the defendant 35 percent of his military retirement while he continued to pay all household expenses." (Footnote omitted.)

[had] rendered the judgment ambiguous" and "subsequent orders [had] clouded the court's original judgment granting specific performance . . . ." Id. As in *Forcier*, we conclude that the April, 2021 agreement and the court's October 7, 2021 order in the present case rendered the plaintiff's obligation to comply with the prior pendente lite orders unclear and, accordingly, affirm the trial court's decision to decline to hold the plaintiff in contempt for violating the pendente lite orders.[26]

## B

The defendant next claims that the court abused its discretion by failing to hold the plaintiff in contempt for failing to comply with the automatic orders prohibiting him from buying and selling vehicles during the pendente lite period and incurring debt to purchase such vehicles. The plaintiff counters that the court properly concluded that he did not violate the automatic

[26] To be clear, the parties' April, 2021 agreement did not render the court's November, 2019 pendente lite orders unenforceable. Our conclusion, rather, is that, under the unique circumstances of this case, the court properly found that the parties' April, 2021 agreement had rendered the plaintiff's obligations pursuant to the November, 2019 orders unclear and, thus, not supportive of an adjudication of contempt. The plaintiff's obligation to comply with the November, 2019 orders was further clouded by the court's October 7, 2021 interim orders. Under these circumstances, the court properly declined to adjudicate the plaintiff in contempt for violation of the November, 2019 pendente lite orders.

Finally, we note that, "[i]n a contempt proceeding, even in the absence of a finding of contempt, a trial court has broad discretion to make whole any party who has suffered as a result of another party's failure to comply with a court order." (Internal quotation marks omitted.) *O'Brien* v. *O'Brien*, 326 Conn. 81, 99, 161 A.3d 1236 (2017). Citing this principle, the defendant argues that, *even in the absence of a finding of contempt*, the court should have remedied the situation by requiring the plaintiff to make the payments pursuant to the pendente lite agreement. We note that the defendant did not make this argument in her motion for contempt based on the plaintiff's failure to comply with the pendente lite orders. More importantly, however, under the circumstances set forth in this opinion, we cannot conclude that the court abused its discretion in failing to order the plaintiff to make payments pursuant to the November, 2019 order.

orders when he continued his practice of buying and selling used vehicles. We agree with the plaintiff.

Practice Book § 25-5 (b) (1) provides: "Neither party shall sell, transfer, exchange, assign, remove, or in any way dispose of, without the consent of the other party in writing, or an order of a judicial authority, any property, *except in the usual course of business* or for customary and usual household expenses or for reasonable attorney's fees in connection with this action." (Emphasis added.) The automatic orders further provide that "[n]either party shall encumber . . . any property"; Practice Book § 25-5 (b) (3); and "[n]either party shall incur unreasonable debts . . . ." Practice Book § 25-5 (b) (5). Whether a transaction has been conducted in the usual course of business and is, therefore, exempt from the automatic orders, is a question of fact to be determined by looking at the circumstances of each case. See *O'Brien* v. *O'Brien*, 326 Conn. 81, 115, 161 A.3d 1236 (2017). "Whether a transaction is conducted in the usual course of business does not turn solely on the type of asset or transaction but on whether the transaction at issue was *a continuation of prior activities* carried out by the parties before the dissolution action was commenced." (Emphasis in original; internal quotation marks omitted.) *Leonova* v. *Leonov*, 201 Conn. App. 285, 318–19, 242 A.3d 713 (2020), cert. denied, 336 Conn. 906, 244 A.3d 146 (2021).

In its memorandum of decision, the court stated: "The plaintiff buys, sells and trades used cars and motorcycles. This practice is not new; it has been a source of contention throughout the marriage as these used vehicles break down routinely." Referring to the plaintiff as a "gearhead," the court detailed the plaintiff's spending regarding these vehicles, noting that it was "not extravagant."[27] The court also noted that the defendant "resented the plaintiff for buying and selling used

___

[27] The court stated: "The plaintiff buys, sells and trades used cars and motorcycles. This practice is not new; it has been a source of contention

cars. It annoyed the defendant not to be consulted to which he would reply, 'Get a job.' " (Footnote omitted.) The defendant acknowledges that the plaintiff bought and sold vehicles during the parties' marriage. She contends, however, that, because this was a continued source of contention between the parties and she did not approve of the transactions, the "usual course of business" exception to Practice Book § 25-5 (b) (1) does not apply. We disagree.

In discussing the "usual course of business" exception to the automatic orders, our Supreme Court has stated: "We do not suggest . . . that the usual course of business exception is reserved only for transactions made in connection with a party's business or profession; rather, because the automatic orders are intended to maintain the status quo between the parties, the exception would appear to extend to personal transactions, but only if such transactions are conducted in the normal course of the parties' ordinary activities, such that both parties would fully expect the transactions to be undertaken without prior permission or approval." *O'Brien* v. *O'Brien*, supra, 326 Conn. 115 n.12. "Thus, personal transactions . . . will meet the exception only if they previously were conducted in the normal course of the parties' ordinary activities, *such that both parties would fully expect the activity to be undertaken without the actor obtaining prior consent.*" (Emphasis added.) *Leonova* v. *Leonov*, supra, 201 Conn. App. 319.

throughout the marriage as these used vehicles break down routinely. The defendant sought a newer, more reliable vehicle that does not break down. He is currently spending $1400 a month financing $56,500 in loans for these motor vehicles. He is a gearhead; this is his style, it is not extravagant; he has three used cars and two used motorcycles. Last summer, while this action was pending, the plaintiff traded a used motorcycle that he was trying to sell for another used motorcycle, a 2001 Moto. Last fall, while this action was pending, the plaintiff's primary vehicle, a 2006 Jeep, broke down and he bought another used vehicle, a 2007 Toyota. The financing for the parties' son's vehicle is included above." (Footnotes omitted.)

On the basis of the foregoing, once the trial court found that the plaintiff's practice of buying and selling motor vehicles was done in the usual course of business, it properly declined to adjudicate the plaintiff in contempt for violating the automatic orders. We, therefore, conclude that the court properly exercised its discretion in denying the defendant's motions for contempt based on a violation of the automatic orders.

C

The defendant next claims that the court abused its discretion by failing to award reasonable attorney's fees after adjudicating the plaintiff in contempt for refusing to comply with discovery orders. The defendant contends that the court's imposition of only $1000 in attorney's fees punishes her for the plaintiff's transgressions and rewards the plaintiff for violating clear court orders. The plaintiff counters that the court entered an award that was reasonable and took the entirety of the parties' financial situation into account.

General Statutes § 46b-87 grants the court the discretion to award attorney's fees to the prevailing party in a contempt proceeding. "The award of attorney's fees in contempt proceedings is within the discretion of the court. . . . An abuse of discretion in granting the counsel fees will be found only if this court determines that the trial court could not reasonably have concluded as it did. . . . Importantly, where contempt is established, the concomitant award of attorney's fees properly is awarded pursuant to § 46b-87 and is restricted to efforts related to the contempt action." (Citation omitted; internal quotation marks omitted.) *Malpeso* v. *Malpeso*, 165 Conn. App. 151, 184, 138 A.3d 1069 (2016).

The following additional facts are necessary for the resolution of this claim. On December 13, 2021, the trial court, *Nastri, J.*, issued an order, following a hearing,

requiring the plaintiff to comply with outstanding discovery requests by December 20, 2021. On December 21, 2021, the defendant filed the motion for contempt at issue, stating that the plaintiff had failed to comply with the December 13, 2021 order, and the plaintiff filed a notice of compliance with the outstanding discovery requests. On January 4, 2022, the defendant filed a request for a status conference due to the plaintiff's failure to comply with all discovery requests, and the plaintiff filed another notice of compliance providing additional documents. The plaintiff also filed an objection to the defendant's request for a status conference, contending that he had complied with all outstanding discovery.[28] The court granted the defendant's request for a status conference and overruled the plaintiff's objection.

On January 10, 2022, the defendant filed a motion in limine pendente lite, in which she requested, in part, that the court order sanctions pursuant to Practice Book § 13-14 due to the plaintiff's failure to comply with discovery. On the first day of trial, counsel for the defendant argued that the plaintiff had provided some but not all documents by December 20, 2021. Counsel for the plaintiff indicated her belief that her client's discovery responses had been complete, and she indicated that she would continue to review the requests with the plaintiff to produce any missing documents. The court indicated that the outstanding motions for contempt and motion in limine would be taken up during the course of the trial.

During closing arguments at the conclusion of trial, counsel for the plaintiff reiterated that her client had complied with the discovery requests; counsel for the

---

[28] On January 5, 2022, the defendant filed a reply to the plaintiff's objection to her request for a status conference, listing the documents that had not been provided, despite the plaintiff's representations to the contrary.

defendant, however, argued that she had "never seen a bigger lack of compliance on discovery" and that, notwithstanding that counsel for the plaintiff had certified compliance with the discovery requests, documents were still missing. She also stated that she received "hundreds of pages of documents after [December 20, 2021]," when they "should have been provided well before that." In its decision, the court stated that "[t]he plaintiff is found to have wilfully violated the discovery orders by not producing documents as ordered; some of the documents were produced during this trial."[29] (Footnote omitted.) Although counsel for the defendant had filed an affidavit reflecting attorney's fees and expenses in the amount of $17,282.50 related to her motions for contempt, the court ordered the plaintiff to pay $1000 in attorney's fees to the defendant as a result of its finding of contempt.

According to the defendant, the court abused its discretion in ordering the plaintiff to pay only $1000 in attorney's fees when her affidavit of attorney's fees reflected fees and expenses in the amount of $17,282.50. Although we agree that the defendant's affidavit reflected attorney's fees and expenses in the amount of $17,282.50, we also note that this affidavit included fees related to the motions for contempt that were denied by the trial court. Specifically, the affidavit stated, in part, that the attorney's fees were "related to the various *motions* for contempt" and included fees for "[l]egal research regarding contempt motions, automatic orders and court action on same, [e]xtensive discussion with client [regarding] plaintiff's purchase of vehicles, review of photos of vehicles, [and] [r]eview of records and court orders [regarding] obligation to pay for various items under agreements."[30] We are unable

___

[29] The court did not specify which documents had been produced and which documents were still missing.

[30] The defendant had filed a prior affidavit of legal fees on December 13, 2021, reflecting $3557.50 as the total amount of fees and expenses "related

to conclude that the court abused its discretion by failing to award attorney's fees based on motions for contempt that the court properly denied.

Furthermore, although the defendant relies on *Ramin* v. *Ramin*, 281 Conn. 324, 915 A.2d 790 (2007), as support for her argument that the court's actions effectively penalized the innocent party and rewarded the party who abused the discovery process, that case is readily distinguishable from the present case. In *Ramin*, our Supreme Court concluded that the trial court had abused its discretion in refusing to consider a plaintiff's motion for contempt and request for sanctions based on the defendant's repeated failure to comply with discovery requests. Id., 330. In the present case, the court did not decline to act on the defendant's motion for contempt. The court, rather, granted the defendant's motion for contempt and ordered the plaintiff to pay $1000 to the defendant as a result of the contempt.[31] Additionally, it was undisputed in *Ramin* "that the case was rife with discovery misconduct by the defendant." Id., 340. The trial court's decision in *Ramin* explicitly noted, with respect to the defendant's misconduct during trial, "the defendant's pattern of deceit and disdain for the legal process." Id., 356. There is no such finding in the present case.

"[I]t is not the role of this court to exercise discretion to determine what attorney's fees, if any, are just if contumacious conduct has been proven, but to review the trial court's exercise of discretion in this regard."

to the attorney's fees with respect to the discovery matters at issue in the December 13, [2021] hearing."

[31] The defendant contends that the trial court never ruled on her motion in limine. As to this motion, the court stated, at the commencement of trial on January 10, 2022: "So, that's my order on the motion in limine, docket entry 200.00. The [c]ourt will consider issuing an interim order if it deems it appropriate based on the evidence." The court's order on the motion in limine, dated January 10, 2022, states: "No action necessary."

*Mitchell* v. *Bogonos*, supra, 218 Conn. App. 70. On the basis of our review of the proceedings in the present case, we cannot conclude that the court abused its discretion in ordering the plaintiff to pay the defendant $1000 in attorney's fees after adjudicating him in contempt for failing to comply with the court's discovery orders.

The judgment is reversed only as to the financial orders, and the case is remanded for a new trial on all financial issues; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.